John Arthur DEBELLA, Petitioner

v.

The PEOPLE of the State of Colorado, Respondent.

No. 09SC553.

Supreme Court of Colorado, En Banc.

June 7, 2010.

Isaacson Rosenhaum P.C., Blain D. Myhre, Denver, Colorado, The Dubofsky Law Firm, P.C., Jean E. Dubofsky, Boulder, Colorado, Attorneys for Respondents.

John W. Suthers, Attorney General, Katherine J. Gillespie, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

John DeBella challenges the court of appeals' decision affirming the trial court's order, which allowed a jury unfettered access to a videotape of a child sexual assault victim's interview with a detective and counselor. *See People v. DeBella,* 219 P.3d 390 (Colo.App.2009). We granted certiorari to consider the propriety of the trial court's order in light of our decision in *Frasco v. People,* 165 P.3d 701, 703 (Colo.2007).[1] We conclude that the trial court failed to exercise its discretion with regard to controlling jury access to testimonial evidence during deliberations and so reverse the court of appeals' decision.

## II. Facts and Procedure

John DeBella was charged with sexual assault on a child and enticement. At trial, the prosecution presented two videotapes of the victim describing the incidents underlying DeBella's charges to a detective and counselor. Portions of the first videotape and the entirety of the second were admitted into evidence and played for the jury in open court. The victim also testified during trial as to his memory of the incidents and was subject to cross-examination. On cross, the victim was principally questioned about prior false reports he had filed and other attention-seeking behavior. Throughout the trial and during closing arguments, DeBella's attorney drew attention to inconsistencies between the victim's trial testimony and his account of the incidents in the recorded interviews.

At the close of the trial, the trial court announced its intent to provide the jury with a TV and the second videotape, thereby al-

---

1. The issue on which we granted certiorari read as follows:

 Whether the court of appeals erred in concluding the trial court did not commit reversible error by permitting the jury—over defense objection and without a request from the jury—to

 review during deliberations an ex parte videotaped interview of the victim without limiting the jury's use of the videotape and without instructing the jury not to place undue emphasis on the videotape.

lowing the jury unconstrained access to the tape during its deliberations. The court noted that the first tape would not be provided to the jury because it had not been redacted and so contained portions of the interview that had been ruled inadmissible. DeBella's attorney objected to the plan, arguing that, unless the court imposed restrictions on the jury's access to the second tape, the jury's ability to review the tape might result in undue prejudice to the defendant. The court overruled the objection, citing *People v. McKinney*, 80 P.3d 823 (Colo.App.2003), for the proposition that "the basis no longer exist[ed] for prohibiting juror access during deliberations to ... videotapes," unless such access was "infeasible." The hour-long tape was provided to the jury, which deliberated for seven hours before finding DeBella guilty.

While DeBella's case was pending on direct appeal, we disapproved of *McKinney* and its progeny in *Frasco v. People*, clarifying that trial courts could in fact limit access to trial exhibits during jury deliberations in order to ensure evidence is not "given undue weight or emphasis by the jury." 165 P.3d at 703 (quoting *Settle v. People*, 180 Colo. 262, 264, 504 P.2d 680, 680–81 (1972)). The court of appeals, applying our decision in *Frasco*, analyzed the trial court's decision to allow the jury unfettered access to the tape as though it were an exercise of that court's discretionary authority. 219 P.3d at 392–98. The court of appeals concluded that the trial court had not abused its discretion by providing the tape to the jury. We granted DeBella's petition for certiorari and now reverse.

### III. Applicable Law and Standard of Review

DeBella argues that the trial court erred by not restricting the jury's access to the second videotape. In *Frasco*, we considered the propriety of a trial court's decision to provide a jury with unsupervised access during its deliberations to a videotaped interview of the child victim of alleged sexual assaults. *See* 165 P.3d at 702. There, the jury requested to review the videotape after retiring. The trial court, after conferring with counsel, provided the tape to the jury but

instructed the jury not to give the videotape any special weight. *See id.* at 705–06. We held that, under these circumstances, the trial court's exercise of control over the videotape, minimal though it was, had not amounted to an abuse of discretion. *See id.* However, we emphasized that trial courts have an "obligation ... to assure that juries are not permitted to use exhibits in a manner that is unfairly prejudicial to a party." *Id.* at 704.

Although the trial court's reliance on *McKinney* for a contrary proposition may be understandable as *Frasco* had not yet been announced, *Frasco* did not set forth a new rule of law on this issue. *See id.* Rather, in *Frasco* we reaffirmed the vitality of our decision in *Settle v. People*, 180 Colo. 262, 504 P.2d 680 (1972), and in so doing clarified that—contrary to the suggestion in *McKinney*—"trial courts exercise discretionary control over jury access to trial exhibits during their deliberations." 165 P.3d at 704. The trial court's discretionary control over jury access to trial exhibits was thus established in our precedent. This point notwithstanding, the parties agree that our decision in *Frasco* governs our review here because, though *Frasco* was issued after the trial court's order, it was announced while DeBella's case was pending on direct appeal. *See Lopez v. People*, 113 P.3d 713, 716 (Colo. 2005).

█ Turning then to DeBella's challenge, our review of such alleged trial errors progresses in two parts. First, we must determine whether any error is recognizable when the record is viewed with the appropriate level of deference to the trial court's decisions. Next, if an error is found, we must determine the appropriate remedy.

█ Here, control over the use of exhibits during jury deliberations remains firmly within the discretion of the trial court. *See Frasco*, 165 P.3d at 704. It is a long-standing principle of appellate review that an appellate court may not substitute its own judgment for that of the trial court where a matter is committed to the trial court's discretion. *See Steines v. Franklin County*, 81 U.S. 15, 22, 14 Wall. 15, 20 L.Ed. 846 (1871) ("Matters resting in the discretion of a sub-

ordinate court cannot be assigned for error in an appellate court."). An appellate court may not assign error to a trial court merely because it would have reached a different conclusion. *See, e.g., Whatley v. Wood,* 157 Colo. 552, 561, 404 P.2d 537, 542 (1965). Rather, as it is reviewed for an abuse of discretion, a court's refusal to exclude or otherwise limit the use of an exhibit will generally be overturned only when it is manifestly arbitrary, unreasonable, or unfair. *See Freedom Colo. Info., Inc. v. El Paso County Sheriff's Dep't,* 196 P.3d 892, 899 (Colo.2008) (describing abuse of discretion review). That said, "a court's failure to exercise its discretion as the result of an erroneous construction of statutory restrictions is tantamount to an abuse of discretion." *Chism v. People,* 80 P.3d 293, 294 (Colo.2003). The same is true of such failures resulting from the erroneous construction of controlling precedent. *See Nelson v. Elway,* 971 P.2d 245, 250 (Colo. App.1998).

 Of course, not all abuses of discretion warrant reversal. *See People v. Welsh,* 80 P.3d 296, 310 (Colo.2003) (discussing application of the harmless error doctrine under C.A.R. 35(e)); *see also* Crim. P. 52 (Harmless Error and Plain Error). Only those erroneous rulings that "substantially influenced the verdict or affected the fairness of the trial" should be upset. *Welsh,* 80 P.3d at 310 (quoting *People v. Quintana,* 665 P.2d 605, 612 (Colo.1983)). However, if the influence of the error on the trial is apparent, or if one is left "in grave doubt" as to its effect on the verdict or the fairness of the trial proceedings, the conviction cannot stand. *Id.* (citing *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

## IV. Analysis

### A. Abuse of Discretion

 The People argue that, its reference to *McKinney* aside, the trial court did in fact exercise its discretion to control the jury's access to the videotape but decided that no such control was necessary. Specifically, the People point out that the trial court limited the jury's access to the first interview tape, and so ask us to infer that the trial court's decision to provide the jury with unfettered

access to the second tape was a deliberate calculation in light of all attendant circumstances. Such a decision, they say, should not be upset simply because we may have arrived at a different conclusion. *Cf. Whatley,* 157 Colo. at 561, 404 P.2d at 542.

The record of the trial court's decision simply cannot support the People's inference. When asked by the prosecutor how the court intended to handle the two interview videos during jury deliberations, the trial court responded,

> It's my intent of giving them a TV set and [both videos] pursuant to *McKinney* .... [U]nder the present rule, all exhibits that have been admitted as evidence may be taken into the jury room, unless it is infeasible to do so. Thus, *the basis no longer exists for prohibiting juror access during deliberations* to ... videotapes, audiotapes, or written documents.

(Emphasis added). The trial court thus indicated its misconception that it could not limit jury access to the tapes. *Cf. Frasco,* 165 P.3d at 704. After this comment, however, the prosecutor informed the court that the first tape—only parts of which had been admitted into evidence—had not been properly redacted. Instead, the prosecutor had manually stopped the tape during trial so as to prevent inadmissible portions from being seen by the jury. Hearing this, the court said, "if that's the case then the jury will have to request to view it and [the] court and counsel will monitor the viewing of it in open court."

The trial court's order limiting the jury's access to the first tape was therefore merely a determination that it was "infeasible" to provide the tape to the jury since parts of the video contained information not in evidence. The trial court was ensuring that the jury did not view portions of video that were not in evidence and made no determination as to whether unfettered access to a tape that had been admitted into evidence might prejudice the defendant. Indeed, in response to defense counsel's subsequent objection that providing the jury with access to the second tape would be unduly prejudicial, the trial court told the attorney, "frankly, I think you

articulated what the state of law was for some time in Colorado. [I do] not find that to be the current state of the law." The court then finalized its order that the jury would be given the videotape along with the means to view it. Thus, the court twice indicated it thought its hands tied with regard to the jury's access to the tape.

■ As we explained in *Frasco*, "the trial court's ultimate objective must be to assess whether the exhibit will aid the jury in its proper consideration of the case, and even if so, whether a party will nevertheless be unfairly prejudiced by the jury's use of it." 165 P.3d at 704–05. The record indicates that the trial court here made no such assessment. The inference suggested by the People that the restriction imposed by the trial court on the first videotape indicates an exercise of its discretion with regard to the second is thus wholly without support. Moreover, the trial court's failure to assess the potential for undue prejudice with respect to the jury's access to the tape was a failure to exercise its discretion, and so an abuse of discretion. *See People v. Darlington*, 105 P.3d 230, 232 (Colo.2005) ("failure to exercise discretion is itself an abuse of discretion").

### B. Appropriate Remedy

■ Having determined that the trial court abused its discretion, we must next determine whether that error warrants reversal. We are persuaded that it does.

As an initial matter, the trial court's failure to exercise its discretion in this case leaves us with little by which to measure the potentially prejudicial nature of the jury's unfettered review of the video. The trial court made no assessment on the record of the danger of such unlimited access. As Judge Daily noted in his dissent below, "[h]ere, unlike in *Frasco*, the trial court did not (1) give a limiting instruction with respect to the victim's videotaped statement; (2) wait for a jury request to review the videotape; or (3) obtain counsel's agreement to allow the jury to have access to the tape." 219 P.3d at 404 (Daily, J., dissenting). These distinctions are important as they mark opportunities either for the trial court to explain its reasoning on the record or to make a record of the jury's

use of the exhibit: limiting instructions would be presumed followed, *People v. Dunlap*, 975 P.2d 723, 742–43 (Colo.1999); a request from the jury would be fairly interpreted as indicating the jury had reviewed the evidence; and a consultation with counsel on the matter would require the court review the merits of arguments for and against controlling jury access. As it is, the court's failure to exercise some control over the jury's access to the video, or at least to specify why such control may have been unnecessary, leaves us without any record as to how—or even if—the jury reviewed the tape during deliberations.

■ From this, the People argue it would be speculative to presume that the jury watched the video at all, to say nothing of whether the jury gave it "undue weight or emphasis." *Settle*, 180 Colo. at 264, 504 P.2d at 681. Of course, on a record devoid of any information about the jury's use of the tape, it is equally speculative to presume that the jury did not review the tape. Contrary to the People's urging at oral argument, such a complete lack of record evidence does not weigh in their favor. To so hold would be to undermine the very purpose of appellate review. Where holes in the record are the result of the trial court's error and pertinent inquiries on appeal are reduced to exercises in speculation, the lack of record support should not weigh against the defendant's interests. *See, e.g., Wellons v. Hall*, — U.S. —, 130 S.Ct. 727, 731, — L.Ed.2d — (2010) (per curiam) (stating that a habeas petitioner's claims appeared "speculative" to the court of appeals due to an absence of record, which was partially the result of the trial court's error, and thus the empty record should not have been used as grounds to dismiss those claims).

More importantly, the nature of the video and its importance to the resolution of the trial leave us with "grave doubts" as to whether the jury's unencumbered access to the tape during its deliberations adversely affected the fairness of the trial proceedings. *Welsh*, 80 P.3d at 310. The videotape in question contained the victim's detailed account of the sexual assaults, including some aspects the victim could not remember at

trial. DeBella's principle theory of defense was that the victim was not credible. As emphasized by DeBella's lawyer at trial, the victim's account of the assaults as recorded in the video and as he testified to at trial were at times inconsistent. Indeed, the video was admitted as evidence on the prosecution's motion as a prior inconsistent statement under section 16–10–201, C.R.S. (2009). Moreover, as the only complete recounting of the assaults, the videotape was the linchpin of the prosecution's case against DeBella.

Although the People essentially concede this point, they urge that, because the defense attorney emphasized the video's content at times during the trial, providing the jury with the tape could only have benefited DeBella's arguments. However, the People here conflate an emphasis on contrasting evidence with a charge that the jury review a specific exhibit. Allowing the jury to pore over the tape only marginally facilitated a comparison between that exhibit and the victim's trial testimony, of which jury members only had their memory. On the other hand, the inconsistencies between the victim's recorded and trial accounts of the incidents— almost always present in cases such as these—underscore how central the victim's credibility was to the resolution of the trial, thus heightening the danger of providing the jury with unchaperoned access to only one side of the story. Moreover, the defense attorney's decision to argue evidence admitted over his objection should not operate as a concession to its later use.

 Ultimately, crafting the right procedure to assure the jury does not use trial exhibits in a manner that is unfairly prejudicial to a party rests with the sound discretion of the trial court. *Frasco*, 165 P.3d at 704. A court may, as it did in *Frasco*, simply wait for a jury's request to review such testimonial exhibits before providing the jury access. The court could admonish the jury not to

give the exhibit undue weight or emphasis, instruct the jury that it watch the video no more than a specific number of times, or even require that the video be viewed in open court or under the supervision of a bailiff. In selecting those controls appropriate for each case, the trial court will have made a record of its assessment. Here, though, absent such a record and in light of how the inconsistencies of the tape's content with trial testimony were central to the resolution of the case, we cannot say that the trial court's failure to exercise its discretion was harmless.[2]

The trial court had an obligation to "observe caution" that the tape was not used in such a manner as to create a likelihood of it being given undue weight or emphasis by the jury. *Settle*, 180 Colo. at 264, 504 P.2d at 680–81. On this nearly silent record, we cannot conclude that this obligation was fulfilled. Moreover, the nature of the video and the importance of the discrepancies between its contents and the victim's trial testimony leave us with grave doubts as to whether the error adversely affected the fairness of the trial proceedings.

### V. Conclusion

For the foregoing reasons, the court of appeals' ruling is reversed.

Justice BENDER does not participate.

---

2. Such is often the case where a trial court fails to exercise its discretion. *See, e.g., Coates, Reid & Waldron v. Vigil*, 856 P.2d 850, 857 (Colo. 1993) ("[T]he court of appeals properly concluded that the ALJ's failure to exercise the discretion accorded him pursuant to [the statute] was inconsistent with the existing law, and thus correctly set aside the Panel's affirmance of the ALJ's order."); *Nelson*, 971 P.2d at 250 ("Because of [the trial court's] erroneous conclusion, the trial court did not exercise its discretion in passing upon Nelson's motion to amend; it held, in essence, that the supreme court's prior opinion foreclosed it from exercising that discretion. Consequently, its ruling cannot stand.").