JUSTICE BOATRIGHT,
dissenting.
¶64 Today, the majority retreats from long-standing principles of appellate review to second-guess the trial court’s considered decision in favor of its own remote assessment. Even if I agreed that the trial court abused its discretion, because the majority predicates its decision to reverse Jefferson’s convictions on an ambiguous record about the jury’s access to the DVD, the proper remedy would be to remand to the trial court for clarification, not to reverse the jury’s verdict. However, I conclude that the trial court here adequately exercised its discretion in permitting the jury unsupervised access to the DVD of the forensic interview, and I would reverse the judgment of the court of appeals and affirm Jefferson’s convictions. Hence, I respectfully dissent.
¶65 Initially, in my view, the record regarding the jurors’ access to the DVD is unclear and therefore inadequate for our review. The majority accurately points out that the trial court’s final order purported to al *505 low the jury to view the DVD “as they eho[ose] without supervision,” and that the prosecution mentioned the video and that the jury could watch it while it deliberated. But it is equally accurate that the trial court’s ruling when it admitted the DVD into evidence at a bench conference stated that the jury would have to ask to watch the DVD if it wanted to see it again during deliberations. The trial court never rescinded that order. Furthermore, the record is silent regarding whether the jury had a DVD player or even if the DVD went with the jury into' the deliberation room. In my view, this incomplete and conflicting record prevents a thorough review. Hence, if I agreed with the majority that the trial court abused its discretion, I would remand to the trial court for findings on whether the jury had the DVD and a DVD player and whether it asked to watch the DVD during deliberations. But because I conclude that the trial court did not abuse its discretion here, I think a remand is unnecessary and I would affirm the trial court’s order and Jefferson’s convictions for reasons I now address.
¶66 “[Cjontrol over the use of exhibits during jury deliberations remains firmly within the discretion of the trial court.... [A]n appellate court may not substitute its own judgment for that of the trial court where a matter is committed to the trial court’s discretion.” DeBella v. People, 233 P.3d 664, 666 (Colo. 2010) (citations omitted); see Frasco v. People, 165 P.3d 701, 704 (Colo. 2007); Settle v. People, 180 Colo. 262, 504 P.2d 680, 680 (1972).
¶67 Notwithstanding the fact that there has never been a proven basis for the assumption that jurors are likely to accord undue weight to videotaped testimony when they have access to it during deliberations,[1]1 acknowledge that this assumption is currently the law. To avoid this presumed ill, we have held that trial courts must exercise their discretion in a fashion that ensures the jury does not give evidence “undue weight or emphasis.” DeBella, 233 P.3d at 666 (quoting Frasco, 165 P.3d at 703), This is the only line we have drawn in circumscribing trial courts’ discretion in this context. See Frasco, 165 P.3d at 704 (“[W]e most certainly did not suggest that trial courts are forbidden from permitting [testimonial evidence] to be taken into the jury room. Nor did we fashion any specific mandate to impose time limitations on jury access or give particular limiting instructions concerning use by the jury.”). That we have declined to specify factors, elements, or other considerations indicates to me—and more importantly, to the judges who make these decisions—that trial courts have broad discretion in how they prevent videotaped testimony from unduly influencing jurors. In fact, it is difficult to identify circumstances in which a trial court should be less susceptible to reversal than under an abuse of discretion review of a determination for which there is no prescribed decision matrix. But today, the majority does just that.
¶68 The majority’s analysis rests almost exclusively on criticism of the three factors the court relied on in exercising its discretion. It concludes both that this trial court’s reliance on the factors in the court of appeals’ DeBella opinion constitutes a misapplication of law because we later overruled the court of appeals, maj. op. ¶ 2, and that the factors are inapposite, including because they are likely to be present any time a video of a forensic interview is admitted into evidence, M. at ¶¶ 41-49. I disagree on both counts.
¶69 The majority’s conclusion that the trial court in this case misapplied the law, I think, reads DeBella too broadly. To understand DeBella, we need to highlight a few points in its history. In DeBella, we reversed the defendant’s conviction because the trial court *506 had allowed the video of the forensic interview to go to the jury without any supervision. DeBella, 233 P.3d at 669. There, the trial court read People v. McKinney, 80 P.3d 823, 826 (Colo. App. 2003), rev’d on other grounds, 99 P.3d 1038 (Colo. 2004), to require it to grant the jury unsupervised access.[2] Id. at 667-68. In reversing the conviction, this court held that it was the trial court’s failure to exercise any discretion in giving the jury access to the video that constituted the abuse. Id. at 668 (“[T]he trial court’s failure to assess the potential for undue prejudice with respect to the jury’s access to the tape was a failure to exercise its discretion, and so an abuse of discretion.”). Thus, I read DeBel-la as having overruled the court of appeals for trying to locate and justify an exercise of discretion by the trial court that did not exist, not because the factors it relied on were inapt. Importantly for the present case, this distinction means that this court has not had the opportunity to weigh in on the propriety of the factors until today; therefore, in this case, the trial court did not misapply the law in considering them. See Frasco, 165 P.3d at 704 (“[T]he precise procedure to be followed [in preventing unfair prejudice] must lie within the trial court’s sound discretion.”).
¶70 To the majority’s conclusion that the factors are inapposite, I see greater merit in the trial court’s analysis, and more importantly, I see the trial court exercising its discretion in a reasonable manner. The first factor the trial court considered was that the DVD was admitted into evidence and played for the jury during the trial. That factor recognizes that the video previously passed a CRE 403 evaluation, and satisfied the statutory safeguards the legislature prescribed in allowing admission of such videos into evidence, § 13—25—129(l)(a)—(b), C.R.S. (2016). It also demonstrates that the jury had previously viewed the video, thus diminishing any unfair impact of viewing the video during deliberations. In other words, the jury had already seen it, heard all of the other evidence (including cross-examination of the victim and the forensic interviewer), and received counsels’ arguments about the probative value of the statements on the DVD.
¶71 The second factor the court considered was the existence of other inculpatory evidence, like the victim’s testimony and her outcry to other witnesses. This factor addresses whether and to what extent the video was the linchpin of the prosecution’s case— the existence of other inculpatory evidence reduces the likelihood that the jury would accord the video undue emphasis. Indeed, a review of the closing arguments suggests that the parties considered the victim’s in-court testimony and her mother’s testimony to .be at least as significant as the victim’s recorded statements on the DVD.
¶72 The third factor that the trial court weighed was that the members of the jury had their notes from the trial memorializing any testimony they felt was important. This consideration addresses whether the jury was equipped to properly evaluate the DVD in the deliberation room and put it in context with all of the other evidence and testimony, i.e., to accord it due weight.
173 We explained in DeBella and Frasco that “the trial court’s ultimate objective must be to assess whether the exhibit will aid the jury in its proper consideration of the case, and even if so, whether a party will nevertheless be unfairly prejudiced by the jmys use of it.” DeBella, 233 P.3d at 668; Frasco, 166 P.3d at 704-05. The factors the trial court considered here are tailored to this inquiry and to the question of whether the jury is likely to accord undue weight to the video if allowed to watch it unsupervised. That the trial court considered them demonstrates that it adequately exercised its discretion. *507 While I recognize that the majority’s critique provides some guidance for trial courts in exercising them discretion in future cases, I do not agree that the factors the trial court considered in this instance are inapt, let alone so inapt that the trial court’s reliance on them automatically renders its decision manifestly arbitrary, unreasonable, or unfair. See Frasco, 165 P.3d at 704 (explaining that trial courts must “assure that juries are not permitted to use exhibits in a manner that is unfairly prejudicial to a party” but that “the precise procedure to be followed to assure this result must lie within the trial court’s sound discretion”); People v. Stewart, 55 P.3d 107, 122 (Colo. 2002) (defining what constitutes an abuse of discretion).
¶74 But even if, for the sake of argument, I were to agree that the trial court relied on inapposite factors to weigh the potential for the jury to accord undue weight to the video, I would still conclude that the trial court did not abuse its discretion. In this case, the trial court explicitly and repeatedly demonstrated its familiarity with the controlling ease law. It explained to counsel in a bench conference that the DeBella line of cases required it to determine “whether in my discretion I believe the videotape ... needs to be supervised” such that the jury would have to request the video before the court would consider sending it to the jury,[3] and that it needed to make its determination at the end of the trial in light of all the evidence. Additionally, at the time that the trial court first played the video for the jury, it instructed the jurors that they were to determine the credibility and evidentiary weight the video carried in light of the “age and maturity of the child, the nature of the statements, the circumstances under which the statements were made, and any other evidence which will be admitted in the trial for which you choose to consider for that purpose.” This instruction, which comports with the requirement in section 13-25-129(2), assigned to the jurors the responsibility of weighing the video’s evidentiary value against the other evidence admitted at trial, i.e., instructed them to accord the video its due weight.
¶75 In my view, the majority is so focused on the inaptness of the factors that it loses sight of the guiding inquiry under the abuse of discretion standard: whether the trial court’s steps to ensure that the jury did not afford the video undue weight were so lacking as to be manifestly unreasonable, arbitrary, or unfair. In making that assessment here, we are not asked to “infer” that the trial court exercised its discretion as we were in DeBella. 233 P.3d at 667 (declining to do so), Instead, the record amply demonstrates that the court actually exercised its discretion in a manner adequately tailored to ensuring that the jurors did not accord the video undue weight. Indeed, based on the combined effect of the court’s statutory instruction, its three-factor analysis, its order to counsel at a bench conference that the jury would have to request the video to view it during deliberations,[4] the fact that the jurors swore an oath to uphold the law, and our long-held presumption that jurors follow all instructions absent a showing to the contrary, People v. Truesdale, 190 Colo. 286, 546 P.2d 494, 496 (1976), I can only conclude that the court’s decision was not manifestly unreasonable, arbitrary, or unfair.
¶76 I also dissent from the majority’s hamless error analysis. The majority rests much of its “grave doubt” about the effect of the video on two premises: (1) that the trial court did not issue a “limiting instruction cautioning the jury against according the DVD any more significance than the other evidence,” and (2) that the court did not “wait for a jury request to view the DVD.” Maj. op. ¶ 56. As to the majority’s first premise, while the trial court did not expressly caution the jury to avoid giving the DVD undue weight, it did issue an instruction—one the legislature prescribed that, on its face, plainly exhorts jurors to accord the *508 video only the appropriate weight vis-a-vis the other evidence at trial. See id. at ¶ 12 (quoting the instruction in its entirety). As to the majority’s second premise, I agree that there is no record that the jury ever asked to view the video, id. at ¶ 57, but there is also no record that the jury had access to the equipment necessary to view the DVD, or even that the jury took the DVD into the deliberation room. To reach its result, the majority must assume that the jury viewed the forty-five-minute video “over and over and over,” id. at ¶ 61, becoming transfixed by the video’s “[greater]—and more vivid—detail,” id at ¶ 60, thus prejudicing Jefferson. See id. passim.
¶77 Because I believe that the majority is mistaken in its first premise and assumes facts that are unclear in the record in its second, I conclude that any arguable abuse of discretion here was harmless. The fact that the jury acquitted Jefferson of the most serious offense with which he was charged demonstrates that the jury critically weighed all of the evidence and, by extension, strongly suggests that it did not accord the video undue weight. Martin v. People, 738 P.2d 789, 795 (Colo. 1987). Consequently, reversal is inappropriate.
¶78 More generally, when determining whether the trial court’s alleged abuse of discretion harmed Jefferson, we should also consider the extraordinary competence of our jurors. The federal and Colorado constitutions guarantee criminal defendants the right to trial by an impartial juiy of their peers. U.S. Const, amends. V, XIV; Colo. Const, art. II, § 16. Inherent in this guarantee is an abiding faith that a room full of ordinary citizens is equipped to render just verdicts on a reasoned basis. In my experience, that faith is well placed. Yet I cannot reconcile this cornerstone of our justice system with the cynicism that undergirds DeBella and its predecessors. How can we profess to place our trust in juries when we are convinced that they will be so transfixed, them judgment so overwhelmed, by watching a video that we must exhaustively admonish and supervise them? Cf. maj. op. ¶ 60. We allow juries to have unsupervised access to murder weapons, blood-soaked clothes, bags of drugs, and photographs of grisly wounds and dead victims. Trial courts weigh the danger of evidence unfairly prejudicing defendants every day. I cannot agree that a trial court’s discretion is somehow more limited when that evidence is a DVD of a forensic interview—I believe that juries are equally capable of appropriately evaluating this type of evidence too. Cf. United States v. Chadwell, 798 F.3d 910, 915 (9th Cir. 2015) (“The concern for avoiding undue emphasis on particular trial testimony did not limit the discretion of the district court to send the video exhibit to the jury room ‘for review like all other evidentiary exhibits.’ ”) (quoting United States v. Cuozzo, 962 F.2d 945, 953 (9th Cir. 1992)) (discussing a police dashboard camera video in which the defendant admits to criminal conduct).
¶79 Finally, I am concerned that the majority opinion is unmoored from the prece-dential foundation that ostensibly supports its decision. This court began the process of adopting the modern practice almost eighty years ago, Wilson v. People, 103 Colo. 150, 84 P.2d 463 (1938), and we have since allowed jurors to listen to a recording of a portion of the trial testimony, Settle, 504 P.2d at 680-81, and to watch a video of a forensic interview admitted into evidence, Frasco, 165 P.3d at 706. By the time this court decided Fras-co, our law presumed that properly admitted evidence would accompany the jurors into the deliberation room so long as the trial court exercised its discretion in sending the evidence with them. See Frasco, 165 P.3d at 704. DeBella only clarified that a total abdication of responsibility or misapplication of the law would render a trial court’s choice to give the jury unsupervised access improper. 233 P.3d at 666-68.
¶80 But today, the majority issues a cautionary tale that no exercise of discretion can be sufficient to allow juries to have unsupervised access to videos of forensic interviews. The majority effectively creates a bright-line requirement that tidal courts issue a limiting instruction and supervise the jurors’ viewing, whether by requiring them to watch the video in the courtroom, limiting the number of times they can watch it, or taking some other measure. I think this greatly expands, if not *509 outright conflicts with, our holding in Frasco. 165 P.3d at 704 (“[A] deposition-like automatic rule of exclusion for all testimonial exhibits [is a] court-made rule [that] not only no longer finds support in the civil rules but, more importantly, has never been sanctioned by the holdings of this court.”).
¶81 I would conclude that the trial court properly exercised its discretion, that if there was an abuse, it was harmless, and that the jury’s verdict convicting Jefferson should stand. Alternatively, because the majority predicates its decision to reverse Jefferson’s convictions on an ambiguous record about the jury’s access to the DVD, I would remand to the trial court for clarification. Hence, I respectfully dissent.

. This court first expressed a concern over jurors according undue weight to video of a forensic interview in Frasco. 165 P.3d at 704-06 (concluding under circumstances substantially similar to those here that allowing the jury to have unsupervised access to a video of a forensic interview was not an abuse of discretion). The Frasco court acknowledged that Colorado’s adoption of the modem practice in 1938 exchanged the old English-rule proscription for a new discretionary determination. Id. at 703-04 (acknowledging this change); see Wilson v. People, 103 Colo. 150, 84 P.2d 463, 467 (1938) (effecting it). Despite the Frasco court’s nod to the general need for caution, nowhere in Frasco did we substantiate that jurors in fact accord undue weight or emphasis to this type of evidence.

. In McKinney, a division of the court of appeals interpreted a 1999 amendment to C.R.C.P. 47(m) to require that the trial court send an inculpato-ry, out-of-court written statement from the defendant's coconspirator, which the trial court had admitted into evidence, into the jury deliberation room. McKinney, 80 P.3d at 827-29. Although McKinney was the controlling law at the time of the trial in DeBella, we announced Fras-co while the DeBella defendant's appeal was pending, and the DeBella division of the court of appeals applied Frasco’s requirement that trial courts exercise discretion in sending videos of forensic interviews into jury deliberations. People v. DeBella, 219 P.3d 390, 393 (Colo. App. 2009), rev’d on other grounds, 233 P.3d 664 (Colo. 2010).

. The record is ambiguous. At the time the DVD was admitted, the court ordered that the jurors would have to request the video from the court before they could view it. The trial court never rescinded this order nor explained how tire jury could view the DVD.

. Again, the record is unclear whether the trial court issued this order to the jury, rescinded it, or modified it.