23CA0668 Peo v Hatcher 11-07-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0668
El Paso County District Court No. 18CR1683
Honorable David Shakes, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ontony Andrew Hatcher,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE GOMEZ
Dunn and Navarro, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 7, 2024

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Westerhorstmann Law, LLC, Kristin Westerhorstmann, Grand Junction,
Colorado, for Defendant-Appellant

¶ 1     Defendant, Ontony Andrew Hatcher, appeals the judgment of conviction entered on a jury verdict finding him guilty of third degree assault.  We affirm.

## I.     Background

¶ 2     While Hatcher was housed in a ward of the El Paso County Jail, a floor deputy escorted a nurse into the ward to perform health and welfare checks on the inmates.  At one point, the deputy opened the door to Hatcher's cell to retrieve a dinner tray.  Hatcher pushed past him, screaming, "Help, help, help!"  Hatcher ran toward the nurse, grabbed her by the shoulders, and shook her.  As the deputy attempted to pull Hatcher off the nurse, they all fell to the floor.  Hatcher eventually let go of the nurse when he was tased by another deputy.  The video surveillance system in the jail recorded the incident.

¶ 3     The prosecution charged Hatcher with second degree assault and third degree assault based on the incident.

¶ 4     The case proceeded to a jury trial.  After the close of the prosecution's case, the trial court granted Hatcher's motion for judgment of acquittal on the second degree assault charge on the basis that the prosecution hadn't established the necessary element

that the nurse was an emergency medical service provider. The jury returned a verdict finding Hatcher guilty of the remaining charge of third degree assault.

¶ 5 In this direct appeal, Hatcher contends that the trial court reversibly erred by (1) denying his for cause challenge to a juror, (2) instructing the jury on the absence of an impaired mental condition defense, (3) failing to instruct the jury that one of the charges had been dismissed, and (4) allowing the jury to have unfettered access to a DVD containing the video footage of the incident. We consider each contention in turn.

## II. For Cause Juror Challenge

¶ 6 Hatcher first contends that the trial court erred by denying his for cause challenge to Juror C. We disagree.

¶ 7 Defendants have a constitutional right to a fair and impartial jury, and that right may be violated if a biased juror sits on the jury. *People v. Abu-Nantambu-El*, 2019 CO 106, ¶ 14. In furtherance of this right, section 16-10-103(1)(j), C.R.S. 2024, requires a trial court to grant a challenge for cause to a prospective juror who "evinc[es] enmity or bias toward the defendant or the state" unless the court is "satisfied" that the juror "will render an

2

impartial verdict according to the law and the evidence submitted to the jury at the trial." *See also Abu-Nantambu-El*, ¶ 16. Moreover, a prospective juror should be excused if it appears doubtful that they will be governed by the court's instructions. *Morgan v. People*, 624 P.2d 1331, 1332 (Colo. 1981).

¶ 8    We review a trial court's ruling on a for cause juror challenge for an abuse of discretion. *Vigil v. People*, 2019 CO 105, ¶ 14. A court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair or is contrary to law. *See id.* "We consider the entire voir dire of the prospective juror, but because the trial court is uniquely able to 'evaluat[e] . . . demeanor and body language,' we generally defer to the trial court's assessment of a juror's credibility and sincerity in explaining [their] state of mind." *People v. Blassingame*, 2021 COA 11, ¶ 9 (first alteration in original) (citation omitted) (quoting *Carrillo v. People*, 974 P.2d 478, 485-86 (Colo. 1999)). "This deference extends to statements that 'may appear to be inconsistent or self-contradictory.'" *Id.* (quoting *Carrillo*, 974 P.2d at 487).

¶ 9      During voir dire, Juror C indicated multiple times that he would likely assume that a defendant with prior felony convictions was guilty of the charged offenses.  For instance, he stated:

> [Juror C]: [I]f I knew that guy right here was, as they say, a lifetime criminal, you know, like he's had three armed robberies, 10 break-ins, and he's been convicted of all that, then . . . [t]hat's guilty.  I mean, regardless of this case, knowing his history of his crimes, automatically I would say, oh, hell — excuse me — oh, yeah, he's guilty.  You know what I'm saying?  Because I automatically assume, three armed robberies, two break-ins, all guilty on all charges, yeah, you bet he's guilty.
>
> . . . .
>
> [Defense counsel]: We live in America and there are rules and laws we have to follow. The judge is going to read you the rules that this jury has to follow.  One of those rules is that if you hear that someone has felony convictions, you can't use that in determining whether or not they committed another one. The only thing you can use that for is whether or not they're telling the truth. . . .  [I]f the judge reads you that rule, that doesn't sound like a rule you would be able to follow?
>
> [Juror C]: No, I don't think I could.  Not — knowing he's a career criminal, no, I couldn't follow that law.

¶ 10     However, Juror C also made the following statements while being questioned by the prosecutor:

4

[Prosecutor]: You've heard that this case involves somebody in custody?

[Juror C]: Right.

[Prosecutor]: And if you're seated as a juror on this case, you are to base your verdict based off of the testimony in this case only.

[Juror C]: Right.

[Prosecutor]: Does that make sense?

[Juror C]: Yes.

[Prosecutor]: That the defendant has the right to be tried for this case and this case only?

[Juror C]: Yes.

[Prosecutor]: So, [Juror C], hearing that, oh, the defendant was at the county jail, are you going to hold that against him sitting as a juror in this case?

[Juror C]: What — no.  No, not — the reason he's in there is not my problem.  The reason he attacked that woman — I take it it's a woman that he attacked.  If they have proof that he did that, guilty.

[Prosecutor]: Okay.  So you'll base your verdict —

[Juror C]: On the evidence.

¶ 11     Further, the trial court had the following exchange with Juror C:

[The Court]: In our country, we don't try people based upon their backgrounds, we try people based upon evidence presented in the course of the trial. So if you hear about a felony conviction, it's only for that limited purpose [regarding credibility] that you may use it. You may not use it to say, well, he's got a felony conviction or two, therefore, it's more likely that he committed this crime. That's not how we do things here.

So, [Juror C], with that explanation, can you follow that rule or not?

[Juror C]: Yes, sir, I can. I'm not going to hold it against him. Understand, you prove that he committed this crime, it's not a problem. You prove it.

¶ 12 Defense counsel challenged Juror C for cause, but the court denied the challenge, explaining that "he . . . stated he would follow the instruction on the applicable law when I told him what the instruction was." Defense counsel later removed Juror C using a peremptory challenge. Defense counsel used all the defense's peremptory challenges at trial.

¶ 13 In a similar case, a prospective juror made statements during voir dire suggesting that, as a result of her experience working for the Department of Corrections, "she would struggle to impartially judge [the defendant's] credibility due to his status as an inmate."

*People v. Oliver*, 2020 COA 97, ¶ 16. However, in other exchanges, she "indicated that she could judge [the defendant] fairly even though he was incarcerated." *Id.* A division of this court, in "reviewing the entire voir dire of [the juror]," determined that "the record support[ed] that she could render an impartial verdict notwithstanding her professional experience." *Id.* Accordingly, the division concluded that "[t]he trial court's decision to deny the challenge for cause . . . was not manifestly arbitrary, unreasonable, or unfair, nor was it contrary to law." *Id.*

¶ 14    Similarly, here, Juror C made statements suggesting that he would have difficulty setting aside Hatcher's prior convictions in evaluating whether Hatcher was guilty of the charged offenses, but he also made other statements indicating that he would be able to follow the court's instructions to use evidence of prior convictions only to evaluate Hatcher's credibility and not as evidence that Hatcher was guilty of the charged offenses. As in *Oliver*, the record of Juror C's voir dire as a whole supports the trial court's conclusion that, notwithstanding some of his contradictory statements, he would be able to render an impartial verdict in accordance with the court's instructions. *See id.*

7

¶ 15 Moreover, the fact that Juror C in the end said he could put his personal beliefs aside and follow the court's instructions distinguishes this case from *People v. Clark*, 2022 COA 33, *aff'd*, 2024 CO 55, on which Hatcher relies. In that case, the prospective juror not only "expresse[d] a bias" but went on to "explicitly reject[] the possibility of setting aside that bias." *Id.* at ¶ 20.

¶ 16 More generally, a trial court is "in the best position to observe [a] potential juror's demeanor and credibility when assessing whether the juror can follow the court's instructions," *People v. Gulyas*, 2022 COA 34, ¶ 25, particularly where, as here, "the juror's answers are inconsistent or self-contradictory," *People v. Lopez*, 97 P.3d 277, 279 (Colo. App. 2004); *see also Blassingame*, ¶ 9. In such circumstances, we must affirm the trial court's decision so long as it "fell within a range of reasonable options." *Vigil*, ¶ 14. Given the record support for the trial court's ruling, we conclude that its decision was within that range of reasonable options.

¶ 17 Additionally, even if the trial court's ruling was erroneous, Hatcher hasn't shown that it violated his right to an impartial jury. "[T]he defendant's right to an impartial jury can be adversely affected by an erroneous denial of [a] challenge for cause only if that

8

juror is not otherwise removed, as by a different challenge for cause or a challenge exercised peremptorily." *Id.* at ¶ 15. Any error in denying a challenge for cause is harmless, and thus doesn't serve as a basis for reversal, if the challenged juror didn't serve on the jury, the defense was allowed to use their statutorily allotted number of peremptory challenges, a biased juror didn't otherwise evade removal, and the trial court didn't act in bad faith by deliberately misapplying the law to force the defense to use up a peremptory challenge. *See Clark*, 2024 CO 55, ¶¶ 43, 45, 61-63.

¶ 18    Here, the challenged juror didn't serve on the jury; Hatcher was able to use his statutorily allotted number of peremptory challenges; Hatcher hasn't shown that a biased juror actually sat on the jury; and Hatcher hasn't alleged or shown any bad faith by the trial court. Hatcher argues only that "[i]n using a peremptory challenge against Juror C, defense counsel was denied the opportunity to use that peremptory challenge on other jurors who expressed bias against Mr. Hatcher but were more effectively rehabilitated by the trial court." But he doesn't identify any particular sitting juror who was supposedly biased, nor does he develop any argument regarding such bias. And, more generally,

because there is no right "to shape the composition of the jury through the use of peremptory challenges," he "could not have been harmed by the deprivation of any such right." *Vigil*, ¶ 25.

¶ 19     Thus, Hatcher hasn't shown that any error in denying his for cause challenge was harmful.

## III.   Jury Instructions

¶ 20     Hatcher next contends that the trial court erred in two ways in its instructions to the jury: (1) by giving an inaccurate instruction regarding the lack of an impaired mental condition defense in this case; and (2) by failing to instruct the jury that it had dismissed the second degree assault charge.

### A.    Absence of an Impaired Mental Condition Defense

¶ 21     Hatcher argues that the language the trial court gave indicating there was no impaired mental condition defense in this case was outdated, inaccurate, and misleading.  However, any error in the language of this instruction was invited by Hatcher because his counsel proposed the language he now challenges.

¶ 22     During the jury instruction conference, the court told the parties that, because there had been some discussion of Hatcher's mental health issues, the court felt it would be appropriate to

10

instruct the jury that Hatcher was not asserting a mental health defense. When the parties returned the next day with proposed instructions on this issue, defense counsel objected to the court providing such an instruction at all. She argued that, while Hatcher wasn't arguing that he was not guilty by reason of insanity, his mental condition was relevant to whether he had formed the requisite mens rea. However, she asked that, if the court were to give an instruction, it use the defense's proposed instruction. The court decided to use the defense's proposal and thus advised the jury that "there [wa]s no impaired mental condition defense" in the case. Defense counsel also indicated, in response to the prosecutor's objection, that they could add a definition of "impaired mental condition." The court suggested such a definition, defense counsel agreed to it, and it was included as part of the instruction.

¶ 23     Under the doctrine of invited error, a party may not "complain[] on appeal of an error that [they] invited or injected into the case; the party must abide the consequences of [their] acts." *People v. Rediger*, 2018 CO 32, ¶ 34. "Invited error is a narrow doctrine and applies to errors in trial strategy but not to errors that result from oversight." *Id.* Accordingly, "a party invites an error in

11

a jury instruction when that party drafted or tendered the erroneous instruction." *Id.*

¶ 24     Hatcher now argues that the instruction shouldn't have made any reference to an "impaired mental condition defense," as such a defense doesn't apply to any offenses committed on or after July 1, 1995. *See* § 16-8-102(2.7)(b), C.R.S. 2024; § 18-1-803(4), C.R.S. 2024; *see also People v. Rosas*, 2020 CO 22, ¶ 2 ("[W]hat used to be the defense of 'impaired mental condition' is now subsumed within the defense of insanity."). Thus, Hatcher argues, the reference to the defense inaccurately and misleadingly suggested to the jury that such a defense might've been available, but he didn't qualify for it.

¶ 25     Because defense counsel not only didn't object to this language but actually proposed it, the defense invited any error in including this language in the jury instruction. Accordingly, we conclude that the doctrine of invited error precludes our review of this issue. *See Rediger,* ¶ 34.[1]

---

[1] In his reply brief, Hatcher asserts a different argument — that the court erred in giving any instruction on the issue at all. Because he didn't develop this argument until his reply brief, we don't consider it. *See People v. Archer*, 2022 COA 71, ¶ 32 n.3; *Peña v. Am. Fam. Mut. Ins. Co.*, 2018 COA 56, ¶ 21 n.4.

B.    Judgment of Acquittal on Second Degree Assault Charge

¶ 26    Hatcher next argues that the trial court erred by failing to provide a jury instruction explaining that it had dismissed the second degree assault charge.  We disagree.

¶ 27    After the court granted the motion for judgment of acquittal as to the second degree assault charge, it solicited the parties' positions on what, if anything, it should tell the jury about the dismissal of one of the two charges the court had referenced at the outset of the case.  The court suggested two potential options: (1) it could tell the jury to only be concerned with the final instructions, and "leave it at that"; or (2) it could explain to the jury what happened, though that option "seem[ed] to [it] to be dangerous."  The prosecutor requested option one.  Defense counsel requested option two — specifically, "inform[ing] the jury that the charge was dismissed" — and argued that the jurors otherwise might be "confused or think that they're missing something in their instructions."

¶ 28    The court didn't expressly rule on the parties' arguments, but it ultimately chose the first option, instructing the jury as follows:

The instructions that I have given to you right now are the final instructions. To the extent that there may be a difference between what I said in the beginning and what I'm saying now, these instructions control. Specifically, when we started the case, there were two counts. You are to be concerned only with the count that I have addressed here in these final instructions.

¶ 29     "The trial court has a duty to correctly instruct the jury on all matters of law for which there is sufficient evidence to support giving instructions." *People v. Lopez*, 2018 COA 119, ¶ 35. But because a trial court has broad discretion to fashion the form and style of instructions, we review for an abuse of discretion a trial court's decision whether to give a particular instruction. *Suydam v. LFI Fort Pierce, Inc.*, 2020 COA 144M, ¶ 10.

¶ 30     We discern no abuse of discretion in the instruction the court chose to give. Contrary to Hatcher's argument, the instruction gave jurors sufficient explanation as to why they had initially been told there were two charges but were then only being instructed on one. And it was reasonable for the court to be concerned that saying too much to the jurors about its legal ruling could be "dangerous."

14

## IV. Unfettered Access to Video Evidence

¶ 31    Finally, Hatcher contends that the trial court abused its discretion by allowing the jury unfettered access to the DVD containing the surveillance video.

¶ 32    During deliberations, the jury was given access to the surveillance video footage of the incident. Defense counsel asked that the jury only be able to watch the footage two times. But the court rejected counsel's argument and allowed the jury to have unfettered access to the DVD containing the footage.

¶ 33    Hatcher makes two arguments on appeal regarding the jury's access to the video evidence. We are not persuaded by either.

### A. Video Label

¶ 34    Hatcher primarily argues that the label of the video file — "Staff Assault-1" — was "an inflammatory, conclusory statement that [went] to an ultimate issue" in the case. However, Hatcher did not preserve this argument, and we conclude that any error doesn't rise to the level of plain error.

¶ 35    We don't require the use of "talismanic language" to preserve an issue for appeal. *Rael v. People,* 2017 CO 67, ¶ 17 (quoting *People v. Melendez,* 102 P.3d 315, 322 (Colo. 2004)). But an

objection must "draw the trial court's attention to the asserted error, thus allowing the court 'a meaningful chance to prevent or correct the error' and creating a record for appellate review." *Id.* (quoting *Martinez v. People*, 2015 CO 16, ¶ 14).

¶ 36 Hatcher didn't preserve any argument relating to the video file label, as his counsel made no reference to the label or its potentially prejudicial title in the discussions in the trial court about the video.

¶ 37 We therefore review this issue for plain error. *See People v. Snelling*, 2022 COA 116M, ¶ 33. Plain error is error that is both obvious, meaning that it "contravene[s] a clear statutory command, a well-settled legal principle, or Colorado case law," and substantial, meaning that it "so undermine[s] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Buckner*, 2022 COA 14, ¶ 43.

¶ 38 Any potential error in allowing the jury unfettered access to the video file label doesn't warrant reversal under this standard because it wasn't obvious. There are statutes, settled legal principles, and case law that govern the *contents* of video evidence. *See generally* CRE 1001-1004; *Rael*, ¶¶ 21-35. But Hatcher hasn't cited, and we haven't found, any statutory commands, settled legal

16

principles, or case law that clearly relate to how video evidence must be labeled. Therefore, if allowing the jury unfettered access to the label of the video here was an error, it can't be said that such an error would have been obvious to the trial court.

## B. Video Contents

¶ 39 To the extent that Hatcher also challenges the jury's unfettered access to the video's contents, this argument also fails.

¶ 40 Control over the use of exhibits during jury deliberations is an issue "firmly within the discretion of the trial court." *DeBella v. People*, 233 P.3d 664, 666 (Colo. 2010). Thus, we won't reverse a trial court's ruling on the issue absent an abuse of discretion. *Id.*

¶ 41 Our supreme court has held that a trial court shouldn't give a jury unfettered access to videos containing *testimonial* evidence, based on a concern that jurors might give undue weight to video statements that they could view repeatedly, as compared to live testimony that they heard only once. *Id.* at 668-69; *see also Rael*, ¶ 22. On the other hand, the supreme court also held that this concern doesn't apply to *nontestimonial* evidence like crime scene videos, and thus it has upheld unfettered juror access to such evidence. *Rael*, ¶¶ 21-24.

¶ 42    The video in this case squarely falls into the latter category.  In this case, as in *Rael*, "we discern no abuse of discretion in the trial court's decision to grant the jury unfettered access to the crime scene video during its deliberations."  *Id.* at ¶ 24.

## V.    Disposition

¶ 43    The judgment is affirmed.

JUDGE DUNN and JUDGE NAVARRO concur.