Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 5, 2017

**2017 CO 59**

**No. 15SC421, <u>Carter v. People</u>—Criminal Law—<u>Miranda</u> warnings—Jury Deliberations.**

Carter petitioned for review of the court of appeals' judgment in <u>People v. Carter</u>, 2015 COA 36, ___ P.3d ___, which affirmed, among others, his conviction of conspiracy to commit first degree murder. With regard to a videotaped interrogation by the police, the district court denied a motion to suppress the defendant's statements, rejecting all of his Fifth and Fourteenth Amendment claims, including his assertion that he had not been adequately advised, as required by <u>Miranda v. Arizona</u>, of his right to have an attorney present during interrogation; and it denied the defendant's motion to limit access to that videotape during jury deliberations. In a fractured opinion, in which all three members of the division of the court of appeals wrote separately, the intermediate appellate court affirmed with regard to both of these assignments of error.

The supreme court affirmed the judgment of the court of appeals. Because the <u>Miranda</u> advisement of the defendant reasonably conveyed that he had a right to consult with counsel, both before and during any interrogation by the police, and because the district court did not abuse its discretion in permitting the jury unrestricted

access to both a video recording and transcript of the defendant's custodial interrogation, the trial court did not err.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 59

### Supreme Court Case No. 15SC421
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 10CA1993

### Petitioner/Cross-Respondent:

Parish Ramon Carter,

v.

### Respondent/Cross-Petitioner:

The People of the State of Colorado.

### Judgment Affirmed
*en banc*
June 5, 2017

**Attorneys for Petitioner/Cross-Respondent:**
Dean Neuwirth P.C.
Dean Neuwirth
  *Denver, Colorado*

The Law Offices of Joshua Johnson
Joshua Johnson
  *Denver, Colorado*

**Attorneys for Respondent/Cross-Petitioner:**
Cynthia H. Coffman, Attorney General
Elizabeth Rohrbough, Senior Assistant Attorney General
  *Denver, Colorado*

**JUSTICE COATS** delivered the Opinion of the Court.
**JUSTICE HOOD** dissents, and **JUSTICE GABRIEL** joins in the dissent.

¶1 Carter petitioned for review of the court of appeals' judgment in People v. Carter, 2015 COA 36, ___ P.3d ___, which affirmed, among others, his conviction of conspiracy to commit first degree murder. With regard to a videotaped interrogation by the police, the district court denied a motion to suppress the defendant's statements, rejecting all of his Fifth and Fourteenth Amendment claims, including his assertion that he had not been adequately advised, as required by Miranda v. Arizona, of his right to have an attorney present during interrogation; and it denied the defendant's motion to limit access to that videotape during jury deliberations. In a fractured opinion, in which all three members of the division of the court of appeals wrote separately, the intermediate appellate court affirmed with regard to both of these assignments of error.

¶2 Because the Miranda advisement of the defendant reasonably conveyed that he had a right to consult with counsel, both before and during any interrogation by the police, and because the district court did not abuse its discretion in permitting the jury unrestricted access to both a video recording and transcript of the defendant's custodial interrogation, the judgment of the court of appeals is affirmed.

**I.**

¶3 Parish Carter was charged with two counts of first degree murder, bribing a witness, conspiracy to commit first degree murder, intimidation of a witness, and unlawful distribution of a controlled substance, all in connection with the drive-by shooting deaths of Javad Marshall-Fields and his fiancée Vivian Wolfe, the week before Marshall-Fields was to testify in a prosecution of Carter's stepbrother, Robert Ray, for an earlier murder. Carter was acquitted of first degree murder and of bribing a witness

2

but convicted of conspiracy to commit murder and the remaining charges. He was sentenced to 48 years for conspiracy and to consecutive lesser terms of incarceration for his other convictions, for a total sentence of 70 years.

¶4 Prior to trial, the defendant moved to suppress the entirety of his interrogation at the Aurora Police Department, asserting that he had not been adequately advised of his Miranda rights, that he did not make an effective waiver of those rights, and that his statements were, in any event, involuntary. The motion was heard over four different days, interspersed among similar motions filed on behalf of two other defendants accused of the same murders. Apart from the testimony of the detective who interrogated Carter, and through her testimony the videotape of the interrogation itself, the remainder of the evidence relative to Carter's interrogation consisted of the testimony of five witnesses, all concerning Carter's mental condition and, as a result of his mental condition, the effectiveness of his waiver of Miranda rights and voluntariness of his statements.

¶5 With regard to the advisement administered to the defendant, itself, the record of the suppression hearing indicated that just prior to that interrogation, the lead detective warned the defendant as follows:

> Since you're in custody, before I can even talk to you I have to do the formal little rights things, okay? So you have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to have an attorney. If you cannot afford to hire a[n] attorney, one will be appointed to you without cost. Do you understand those?

3

Following this advisement, the defendant answered questions for somewhere between ninety minutes and two hours. In doing so, he admitted to being the individual shown on a security videotape the day before the murders approaching Marshall-Fields in a sports bar, after which Marshall-Fields was visibly disturbed. The defendant denied, however, that he made any threats and denied that he made this approach at the behest of others. He further denied any association with Ray or other individuals considered suspects by the police. After the interrogation turned confrontational, the defendant invoked his rights to an attorney and to remain silent, and accordingly, the interrogation was terminated.

¶6    At the conclusion of the lengthy suppression hearing, the district court rejected all of the defendant's grounds for suppressing the interrogation, including his challenge to the adequacy of the Miranda advisement itself. During trial, the prosecution played a video recording of the custodial interrogation, and the recording was admitted into evidence. A transcript of the interrogation was provided to the jurors while the video played, as a demonstrative exhibit, and it was collected from them immediately thereafter. At the close of the evidence, the defendant moved the district court to limit the jury's access to the interrogation exhibits during deliberations, on the grounds that the jury would be unfairly prejudiced by re-watching the detectives' accusations, made during the interrogation, that the defendant was lying to them. The government objected, arguing that because the case turned on the defendant's mental capacity, the jury needed unfettered access to the video—to see and deliberate over "the defendant's

4

demeanor, his conduct, his reaction, his gestures, his inflections throughout the interview[,] to help them assess his mental abilities."

¶7 The trial court largely adopted the government's position, concluding that out-of-court statements of criminal defendants should generally be given to juries, and holding that the specific risk of prejudice asserted by the defendant—arising from the interrogating detectives' accusations—did not warrant restricting the jury's access. The trial court then provided the jury with the DVD recording and a computer on which to play it, placing no restrictions on its use. Later, at the request of the jury, the trial court also provided the jurors with the transcript, along with a defense-requested instruction that unlike the video, the transcript did not constitute evidence.[1]

¶8 On direct appeal, the defendant challenged the adequacy of his Miranda advisement, asserting specifically that the third advisement—that he had a right to have an attorney—failed to convey that he had a right to the presence of counsel both before and during his interrogation. In addition, the defendant asserted that even if the videotape of his interrogation had been properly admitted into evidence, the district court abused its discretion by denying his motion for restricted access and by instead

---

[1] The instruction read:

> You are advised that the transcript is the transcriber's interpretation of what was said and the transcript obviously does not show body language, head movements or intonation. You should rely on the actual video of the interview and only utilize the transcript in viewing the video. You are instructed you are not to rely on the transcript for a final determination of what was said, but rather rely on the video for that purpose.

permitting the jury unfettered access to both the videotape and a transcript of it during its deliberations.

¶9 The court of appeals affirmed the defendant's convictions, with all three members of the panel writing separately. With regard to the adequacy of the Miranda advisement, one panelist declined to reach the issue, reasoning that the specific error assigned on appeal, concerning the timing and extent of the defendant's right to the assistance of counsel, had not been preserved. The remaining two panelists found the advisement inadequate, but one of the two found it to be harmless error. With regard to exercise of the court's discretion in permitting the jury access to the defendant's interrogation, one panelist declined to address the issue, based on a finding that the erroneous admission of the defendant's interrogation was not entirely harmless, while the remaining two panelists concluded that the district court did not abuse its discretion in allowing unfettered access to the out-of-court statement of the defendant, and because the erroneous admission of the defendant's interrogation at trial was harmless, any error in allowing the jury access to the erroneously admitted exhibit was similarly harmless.

¶10 The defendant petitioned this court for further review, challenging the court of appeals' conclusions that the district court's Miranda rulings, although erroneous, were nevertheless harmless, and that the district court did not abuse its discretion in allowing jury access to the defendant's interrogation. The People cross-petitioned for review of the court of appeals' conclusion that the defendant was not adequately advised of his right to the presence of an attorney before and during interrogation.

6

## II.

¶11　In Miranda v. Arizona, the Supreme Court delineated a system for protecting the privilege against self-incrimination of individuals taken into custody or otherwise deprived of their freedom in any significant way by the authorities, and subjected to questioning.  384 U.S. 436, 471, 478–79 (1966).  In the absence of "other fully effective means," this system requires warnings of specific rights, a knowing and intelligent waiver of those rights along with agreement to answer questions, and the opportunity to exercise those rights throughout the interrogation.  Id.  The Supreme Court specifically held that unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against that individual.  Id.

¶12　With regard to the warnings in particular, the Court expressly summarized its reasoning by holding that the individual "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."  Id.  Although the Court made clear that the warnings themselves are an absolute prerequisite, without which sufficient awareness for an effective waiver of those rights cannot be found, it indicated at the same time that no "talismanic incantation" was intended.  California v. Prysock, 453 U.S. 355, 359–60 (1981) (per curiam) (describing Miranda, 384 U.S. at 476, 479).  In subsequent cases, the Court has similarly made clear that it "has never indicated that the rigidity of Miranda extends to

the precise formulation of the warnings given," <u>Florida v. Powell</u>, 559 U.S. 50, 60 (2010) (quoting <u>Prysock</u>, 453 U.S. 355 at 359), nor must the words employed in the warnings be examined "as if construing a will or defining the terms of an easement." <u>Id.</u> (quoting <u>Duckworth v. Eagan</u>, 492 U.S. 195, 203 (1989)). Rather the inquiry is simply whether the warnings "reasonably convey to a suspect his rights as required by <u>Miranda</u>." <u>Id.</u> (quoting <u>Duckworth</u>, 492 U.S. at 203 (quoting <u>Prysock</u>, 453 U.S. at 361)) (internal quotation marks and alterations omitted); <u>see also</u> <u>Sanchez v. People</u>, 2014 CO 56, ¶ 12, 329 P.3d 253, 257.

¶13    In three separate cases, the Supreme Court has addressed the adequacy of a <u>Miranda</u> advisement with respect to the interrogated person's right to the presence of an attorney or some combination of that right and the timing of the right to the appointment of counsel. While it seems clear that a person must be informed of his right to the appointment of counsel before custodial interrogation if he cannot afford but desires one, and his right to consult with counsel and have counsel with him during any interrogation, <u>Miranda</u>, 384 U.S. at 471–73, the Court found in each of these three cases that, "in their totality," the warnings given satisfied the requirements of <u>Miranda</u>. <u>See</u> <u>Powell</u>, 559 U.S. at 61–64; <u>Duckworth</u>, 492 U.S. at 201–05; <u>Prysock</u>, 453 U.S. at 359-61. In perhaps the closest of the three to this case, the Supreme Court concluded that being warned of his right to talk to a lawyer before answering questions and his right to use his rights at any time, reasonably conveyed to the defendant the right to have an attorney present, not only at the outset of interrogation but at all times. <u>Powell</u>, 559 U.S. at 53–54. The Court reasoned that a "reasonable suspect" in a custodial setting

who has just been read his rights would not come to the counterintuitive conclusion that he would be obligated to hop in and out of the holding area to seek his attorney's advice or to anticipate a scenario in which his lawyer would be admitted into the interrogation room each time the police ask him a question and then ushered out each time the suspect responded. Id. at 62–63. Despite acknowledging that the warnings in that case were not the clearest possible formulation of Miranda's right-to-counsel advisement, the Court found them to be "sufficiently comprehensive and comprehensible when given a commonsense reading." Id.

¶14 Unlike the advisement in Powell, the specific advisement of the defendant's right to counsel in this case did not include any temporal limitation that might even colorably be misunderstood to restrict the exercise of that right relative to interrogation by the police. Rather than being advised that he could consult with a lawyer before answering any particular question, which had given rise to a suggestion in Powell that he could therefore consult with counsel only before, and not during, interrogation, the defendant in this case was advised in the present tense, "You have the right to have an attorney," immediately after being advised that before the detective could even talk to him, she had to do "the formal little rights things," a clear reference to the advisement of rights that followed forthwith. In addition to the fact that the defendant was simultaneously advised in the present tense, "So you have the right to remain silent," which the defendant does not suggest could reasonably be understood to refer only to a right to remain silent later at trial rather than at the time of interrogation, the defendant's advisement of his right to counsel was not followed by any suggestion that it would not

9

apply until some later time. Cf. Duckworth, 492 U.S. 195 (resolving a question raised by the subsequent advisement that an attorney would be appointed only "if and when" the suspect went to court). Much as the Court held in Powell, it would be highly counterintuitive for a reasonable suspect in a custodial setting, who has just been informed that the police cannot not talk to him until after they advise him of his rights to remain silent and to have an attorney, to understand that an interrogation may then proceed without permitting him to exercise either of those rights.

¶15 The defendant would prefer to ignore the detective's prologue to her articulation of the four Miranda rights, which expressly notified him that the warnings that followed were a prerequisite to any interrogation by her, and instead to assess in isolation the adequacy of the warning concerning the third right. However, the Supreme Court's Miranda jurisprudence could not more clearly establish that the adequacy of the warnings, as distinguished from the effectiveness of the defendant's waiver of the rights contained in them, is to be assessed objectively, for what the warnings would "reasonably convey," or would convey to a "reasonable suspect," "in their totality." Powell, 559 U.S. at 61–63; Duckworth, 492 U.S. at 205. Unlike the focus of his argument at the suppression hearing on the effectiveness of his waiver, the defendant not only emphatically asserts in his presentation to us that his challenge on appeal is limited to the adequacy of the warnings themselves, but he openly chastises the People for even suggesting that he may intend to include in his assignment of error a challenge to the effectiveness of his waiver. While characterizing the Miranda warnings as "the formal little rights things" appears to be an attempt by the detective to

minimize the significance of waiving those rights, and as the Supreme Court has noted, law enforcement agencies run the risk of obtaining ineffective waivers by introducing ambiguity into the <u>Miranda</u> advisement, <u>Powell</u>, 559 U.S. at 63–64, nevertheless minimizing the significance of waiving the <u>Miranda</u> rights does not, in and of itself, mean the rights have not been reasonably conveyed.

## III.

¶16    In this jurisdiction we have long adhered to the rule that absent a specific exclusion of some particular class of exhibits, trial courts exercise discretionary control over jury access to trial exhibits during their deliberations.  <u>Frasco v. People</u>, 165 P.3d 701, 704 (Colo. 2007) (referencing <u>Wilson v. People</u>, 84 P.2d 463 (Colo. 1938)).  The trial court in criminal proceedings has an obligation, much as it does with regard to the admissibility of evidence generally, to assure that juries are not permitted to use exhibits in a manner that is unfairly prejudicial.  <u>Id.</u>  While acknowledging that some kinds of exhibits obviously have a greater potential for unfair prejudice than others, and bearing in mind the wishes and tactical considerations of the parties, we have held that trial courts must ultimately retain discretionary control over which jury exhibits will be allowed to go to the jury room and under which, if any, restrictions.  <u>Id.</u> at 705.

¶17    Although we also long ago rejected the ancient common law prohibition against permitting writings not under seal to be taken into the jury room, <u>Wilson</u>, 84 P.2d 463, the trial court's responsibilities with regard to testimonial exhibits has, in light of modern rules, not always been clear.  See <u>Frasco</u>, 165 P.3d at 703–04 (tracing impact of amendments to civil rules of procedure on appellate decisions concerning jury access to

11

testimonial exhibits).  In <u>Frasco</u>, however, by analogy to our jurisprudence concerning a trial court's obligations to protect against the undue emphasis by juries on particular portions of trial transcripts during their deliberations, <u>see</u> <u>Settle v. People</u>, 504 P.2d 680 (Colo. 1972), we similarly admonished trial courts to oversee with caution jury use of trial exhibits effectively substituting for trial testimony.  <u>Frasco</u>, 165 P.3d at 704. Without mandating time limitations on jury access or particular limiting instructions concerning jury use of such exhibits, we nevertheless emphasized the trial court's obligation, at least where prompted to do so by a party, to exercise its discretion to guard, as with jury review of specific trial testimony itself, against the risk that testimonial exhibits will be given undue weight or emphasis. <u>Id.</u>

¶18    As we also explain today in <u>Rael v. People</u>, 2017 CO __, ¶¶ 25–35, ___ P.3d ___, out-of-court statements of a party offered against that party have, however, never been considered primarily testimonial in nature. Even for purposes of admissibility, the Colorado Rules of Evidence, like the Federal Rules of Evidence on which they are patterned, exclude such statements from the category of hearsay evidence and admit them into evidence largely "as the result of the adversary system rather than satisfaction of the hearsay rule."  Fed. R. Evid. 801(d)(2) advisory committee's note.  As the sources for the federal committee note demonstrate, this broad notion of adversarial fairness encompasses not only such considerations as the opposing party's ability to explain his own statements without their trustworthiness being tested through cross-examination or alternative indicia, but also that despite possibly having some narrative value, a party opponent's out-of-court utterances offered against him have probative

12

force simply as non-verbal or non-narrative conduct, which is assertedly in conflict with a position he takes at trial. John S. Strahorn, Jr., <u>A Reconsideration of the Hearsay Rule and Admissions</u>, 85 U. Pa. L. Rev. 484, 564, 569–79 (1937); Edmund M. Morgan, <u>Basic Problems of Evidence</u> 265–66 (1962); 4 John Henry Wigmore, <u>A Treatise on the Anglo-American System of Evidence in Trials at Common Law</u> § 1048 (2d ed. 1923).

¶19 Similarly, confessions or out-of-court statements by criminal defendants sufficiently harmful to be offered into evidence by the prosecution have historically been allowed into the jury room, even in jurisdictions permitting much less discretion with regard to jury use of trial exhibits generally. <u>See generally</u> 2 Kenneth S. Broun, <u>McCormick on Evidence</u> § 220 (7th ed. 2013) (majority rule allows jury access to confessions); Jonathan M. Purver, <u>Annotation, Permitting Documents or Tape Recordings Containing Confessions of Guilt or Incriminating Admissions to be Taken into Jury Room in Criminal Case</u>, 37 A.L.R.3d 238 (1971) (updated 2012) (same). While the various rationales for this disparate treatment of confessions may not always have been articulated in precisely the same terms, they appear to share considerations similar to those expressed in the concept of adversarial fairness. <u>See, e.g.</u>, <u>Flonnory v. State</u>, 893 A.2d 507, 528 (Del. 2006) (quoting <u>State v. Jennings</u>, 815 S.W.2d 434, 440 (Mo. Ct. App. 1991), for proposition that this exception is "apparently based on the theory that the centrality of such confessions to the case warrants giving the jury access to them during deliberations"); <u>State v. Castelli</u>, 101 A. 476, 480 (Conn. 1917) ("If these writings were harmful, it was not because any rule of procedure was violated, but because the accused had furnished harmful evidence against themselves."); <u>see generally</u> Broun, <u>McCormick</u>

on Evidence § 220.  Whether or not exclusion of confessions from the jury room was actually prohibited, or allowing access was simply presumed in the absence of a strong showing to the contrary, it has generally been recognized that confessions have probative force other than as mere testimonial exhibits, like depositions or other out-of-court witness statements.  See Flonnory, 893 A.2d at 527–29.

¶20     This court has not had occasion to address the treatment of written or recorded confessions admitted as trial exhibits since we singled out for particular caution exhibits substituting for trial testimony, but the court of appeals has.  In People v. Gingles, heavily relied upon by the division below, a different division of the court of appeals considered both the in- and out-of-state treatment of confessions pre-dating our decision in Frasco and concluded that our expression of caution in that case did not evidence any intent to alter the historically disparate treatment of confessions.  2014 COA 163, ¶¶ 14–18, 350 P.3d 968, 971–72.  In contrast to other witness statements, the Gingles court found that a defendant's confession could be used by the jury during its deliberations, in large part because a confession's "centrality in the case warrants whatever emphasis may result."  Id. (quoting Broun, McCormick on Evidence § 220).

¶21     The court of appeals rightly discerned that in Frasco, in analogizing testimonial exhibits to partial transcripts of actual trial testimony and in requiring the same discretionary caution with regard to jury use of the former as of the latter, we had no intention of including admissions of criminal defendants in the former category.  In addition to having probative force for reasons more related to the adversary process than any narrative or testimonial value a defendant's detrimental out-of-court

14

statements may have, allowing the jury access to exhibits evidencing such statements simply does not implicate the same danger of undue emphasis inherent in permitting the jury access to some, but not all, of the testimonial evidence. Unlike testimonial evidence, the accuracy and veracity of which must be weighed in conjunction with all of the other admissible evidence, a criminal defendant's out-of-court statement offered against him has value primarily as demonstrative evidence of conduct on his part that is contradictory of a position he takes at trial.

¶22　　Much like questions concerning the order of evidence generally, at least in the absence of specific statutes or rules requiring otherwise, trial courts necessarily retain broad discretion concerning jury use of trial exhibits. Unlike jury access to testimonial exhibits with regard to which we require the exercise of particular caution, however, access to transcripts or recordings of the interrogations of criminal defendants does not implicate the same concern for selective use or require the same exercise of caution. While a trial court may find grounds to restrict a jury's access to such exhibits under particular circumstances, they would not typically be the same reasons that might lead it to caution the jury concerning the use of, or limit its access to, testimonial exhibits.

¶23　　Notwithstanding the defendant's assertion to the contrary, the trial court in this case did not abuse its discretion in allowing jury access to the videotape of the defendant's interrogation by failing to exercise any discretion at all, in the mistaken belief that it had no discretion to exercise. Unlike People v. Jefferson, 2017 CO 25, ___ P.3d ___, where we found that the trial court abused its discretion by permitting jury access to testimonial exhibits in reliance on considerations we had expressly found to be

15

inappropriate, the trial court below entertained the defendant's assertions of prejudicial impact, distinguished the defendant's interrogation from testimonial exhibits meriting particular caution, and found that unrestricted access would not be unfairly prejudicial. As an even clearer indication that the court exercised its discretion with regard to permitting jury access to trial exhibits, upon request it further permitted the jury access to a transcript of the interrogation but included a cautionary instruction requested by the defendant.

¶24 Finally, the defendant's assertion of prejudicial impact from permitting the jury to review the police accusations, as distinguished from the defendant's responses themselves, appears to be more appropriately made as a challenge to the admission of unfairly prejudicial evidence than to permitting undue weight to be given by the jury to properly admitted evidence. If a recording of a police interrogation contains evidence of uncharged crimes or otherwise inadmissible evidence, it must of course be redacted before being admitted into evidence. Where, as in this case, the recording of an interrogation has value as demonstrative evidence of the defendant's capacity for fabrication and self-preservation, rather than for any inculpatory admissions by the defendant, its treatment as other than testimonial evidence, for purposes of jury access, is, if anything, even more appropriate.

## IV.

¶25 Because the <u>Miranda</u> advisement of the defendant reasonably conveyed that he had a right to consult with counsel, both before and during any interrogation by the police, and because the district court did not abuse its discretion in permitting the jury

unrestricted access to both a video recording and transcript of the defendant's custodial interrogation, the judgment of the court of appeals is affirmed.

**JUSTICE HOOD** dissents, and **JUSTICE GABRIEL** joins in the dissent.

JUSTICE HOOD, dissenting.

¶26    Just beneath the surface of the majority's decision lurks a national debate about Miranda v. Arizona, 384 U.S. 436 (1966), that the majority ignores:  whether Miranda's third warning—regarding the right to an attorney—must expressly include words that mean "before or during interrogation."

¶27    For the majority, it is enough that the warnings here contained no express temporal limitation on the right to an attorney.  But as several federal circuit courts see it, Miranda requires more, and I agree.  Miranda teems with language conveying that the police must clearly advise a suspect that he has the immediate right to the presence of an attorney.  The warning at issue here did not meet that affirmative obligation.

¶28    And contrary to the majority's analysis, the detective's trivializing of the Miranda warnings did not serve to somehow enhance the effectiveness of the oral, bare-bones advisement she provided.  Instead, labeling that advisement a "formal little rights thing[]" rendered it even more perfunctory and seems to have been intended to lull Carter into complacency.  Perhaps more troubling, this minimizing of constitutional prerogatives was the product of instruction.  The detective did as she was trained to do.  And in so doing, she abandoned a stock Aurora Police Department written advisement that makes abundantly clear when the right to counsel attaches.

¶29    Because Miranda requires that a person subjected to custodial interrogation be advised of when he has a right to a lawyer, I respectfully dissent as to Part II of the majority opinion.

1

## I. **<u>Miranda</u> Requires that the Warnings Include a Temporal Component**

¶30     When we consider <u>Miranda</u>, we consider deeply entrenched constitutional law, not some bureaucratic formality.  <u>See</u> <u>Dickerson v. United States</u>, 530 U.S. 428, 444 (2000) (concluding <u>Miranda</u> states a constitutional rule).  <u>Miranda</u> is, of course, firmly tethered to the Fifth Amendment, which provides in pertinent part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  This privilege against self-incrimination applies to the states through the Due Process Clause of the Fourteenth Amendment.  <u>See</u> <u>Malloy v. Hogan</u>, 378 U.S. 1, 8–10 (1964).  Because the coercion inherent in custodial interrogation by law enforcement can render this foundational privilege more than a little shaky at times, the <u>Miranda</u> Court established a set of prophylactic warnings to shore it up.

¶31     Before a person in custody is questioned by the government, he must be given four warnings about his Fifth Amendment rights.  <u>Miranda</u>, 384 U.S. at 478–79.  As <u>Miranda</u> summarized,

> He must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

<u>Id.</u> at 479.

¶32     According to at least four federal circuits, <u>Miranda</u> compels that the third warning expressly include, in some form, the right to have an attorney present before

2

and during the interrogation.[1]  And not without good reason.  After all, the Court in

Miranda said:

- "[W]e hold that an individual held for interrogation must be <u>clearly informed</u> that he has the right to consult with a lawyer and to have the lawyer with him <u>during interrogation</u> . . . ."  <u>Id.</u> at 471 (emphasis added).

- "[T]he right to have counsel present <u>at the interrogation</u> is indispensable to the protection of the Fifth Amendment privilege . . . ."  <u>Id.</u> at 469 (emphasis added).

- "[T]he need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel <u>prior to questioning</u>, but also to have counsel present <u>during any questioning</u> if the defendant so desires."  <u>Id.</u> at 470 (emphasis added).

Even when the Court summarized the rights for brevity, it used the phrase "<u>presence</u> of an attorney," <u>id.</u> at 444, 479 (emphasis added), implicitly linking the attorney's physical presence to the time of the interrogation.  This conclusion also finds voice in one of the leading treatises on criminal procedure.  2 Wayne R. LaFave et al., <u>Criminal Procedure</u> § 6.8(a) (4th ed. 2015) ("Under <u>Miranda</u>, it is necessary that these warnings cover the

---

[1] <u>See</u> <u>United States v. Tillman</u>, 963 F.2d 137, 140–41 (6th Cir. 1992) (holding advisement about "the right to the presence of an attorney if [defendants] wish" was inadequate, in part because "the police failed to convey to defendant that he had the right to an attorney both before, during and after questioning"); <u>United States v. Noti</u>, 731 F.2d 610, 615 (9th Cir. 1984) ("The right to have counsel present during questioning is meaningful.  Advisement of this right is not left to the option of the police; it is mandated by the Constitution."); <u>United States v. Oliver</u>, 421 F.2d 1034, 1037–38 (10th Cir. 1970) (holding warning that suspect "had the right to an attorney" was inadequate because it did not include temporal component); <u>Atwell v. United States</u>, 398 F.2d 507, 510 (5th Cir. 1968) ("The advice that the accused was entitled to consult with an attorney, retained or appointed, 'at anytime' does not comply with <u>Miranda</u>'s directive 'that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation.'" (quoting <u>Miranda</u>, 384 U.S. at 471)).

right to appointed counsel and the immediacy of the right in the sense that it exists both before and during interrogation.").

¶33 But as the majority and several other federal circuits see things, a general warning about the right to counsel suffices so long as the warning contains no temporal limitation.[2] Maj. op. ¶ 14. The majority emphasizes that Miranda allows flexibility of form and requires no "talismanic incantation." Id. at ¶ 12 (quoting California v. Prysock, 453 U.S. 355, 359 (1981)). It points out that the "inquiry is simply whether the warnings 'reasonably convey to a suspect his rights as required by Miranda.'" Id. (quoting Florida v. Powell, 559 U.S. 50, 60 (2010)).

¶34 Still, the majority appears to recognize that the substance Miranda requires includes conveying the right to have a lawyer present before and during interrogation. Id. at ¶ 13 ("[I]t seems clear that a person must be informed of . . . his right to consult with counsel and have counsel with him during any interrogation . . . ."). But it finds that substance satisfied by language that contains no equivalent of "present before or during interrogation."

---

[2] United States v. Warren, 642 F.3d 182, 185 (3d Cir. 2011) ("[I]t cannot be said that the Miranda court regarded an express reference to the temporal durability of this right as elemental to a valid warning."); United States v. Frankson, 83 F.3d 79, 82 (4th Cir. 1996) ("Given the common sense understanding that an unqualified statement lacks qualifications, all that police officers need do is convey the general rights enumerated in Miranda."); United States v. Caldwell, 954 F.2d 496, 502 (8th Cir. 1992) ("When the only claimed deficiency is that of generality, the teaching of Duckworth that we are not construing a will or defining the terms of an easement convinces us that we cannot hold the warning in this case amounts to plain error."); United States v. Lamia, 429 F.2d 373, 376–77 (2d Cir. 1970) (upholding warning where suspect "had been told without qualification that he had the right to an attorney and that one would be appointed if he could not afford one").

¶35    In so doing, the majority allows a general flexibility of form to overcome a specific deficiency of substance—an approach Miranda forbids. Although Miranda mandates no talismanic incantation, it does require certain substance, including a temporal component with respect to the right to counsel. See supra ¶ 32. Further, it requires that substance to be specifically articulated, not left to be inferred by a suspect from ambiguous language or context. The Court explained that the suspect "must be clearly informed" of his rights, Miranda, 384 U.S. at 471, because "only by effective and express explanation" of those rights to the suspect "can there be assurance that he was truly in a position to exercise [them]," id. at 473. Also, "[n]o amount of circumstantial evidence that the person may have been aware of [the right to counsel] will suffice" in the absence of sufficient express warnings. Id. at 471–72. So, while the police may vary the words they use to convey the necessary substance, they may not omit the substance.

¶36    The majority seems to read Miranda's progeny—Powell, Duckworth v. Eagan, 492 U.S. 195 (1989), and Prysock—as relaxing Miranda's requirement that the necessary substance of the warnings be expressly stated. I disagree.

¶37    To begin with, none of those cases involved Miranda warnings that omitted a necessary part of Miranda's substance—including, as particularly pertinent here, the temporal component of the right to counsel. Duckworth and Prysock concerned warnings that included the required substance but contained verbiage (or in the case of Prysock, a reordering of the substance) that threatened to—but ultimately were held not to—limit the necessary substance. Duckworth, 492 U.S. at 203–05; Prysock, 453 U.S. at 361. The advisements in all three cases included an express temporal component.

5

Powell, 559 U.S. at 54 ("You have the right to talk to a lawyer before answering any of our questions. . . . You have the right to use any of these rights at any time you want during this interview."); Duckworth, 492 U.S. at 198 ("You have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning." (emphasis omitted)); Prysock, 453 U.S. at 356 ("You have the right to talk to a lawyer before you are questioned, have him present with you while you are being questioned, and all during the questioning.").

¶38 True, Powell upheld a set of warnings that did not expressly reference the right to counsel during interrogation. But those same warnings contained other words that conveyed the timing and immediacy of the rights, and nothing in Powell suggested that such words could be entirely omitted. In fact, the Powell majority took care to specifically reject the dissent's charge that it was approving a warning that "entirely omitted" Miranda's before-or-during requirement. Powell, 559 U.S. at 62. It did so by highlighting the language contained in the warnings that was the equivalent of "before or during interrogation." See id. ("They informed Powell that he had 'the right to talk to a lawyer before answering any of [their] questions' and 'the right to use any of [his] rights at any time [he] want[ed] during th[e] interview.'" (alterations in original)).

¶39 In the end, Powell reaffirmed Miranda's rule that the third warning must contain a "before or during interrogation" piece, or its equivalent. Indeed, Powell labeled the temporal language "information Miranda required [the officers] to impart." Id. at 62.

## II. The Warnings Carter Received Were Inadequate

¶40    The detective gave Carter the following advisement:

> Since you're in custody, before I can even talk to you I have to do the formal little rights things, okay?  So you have the right to remain silent.  Anything you say can and will be used against you in a court of law.  You have the right to have an attorney.  If you cannot afford to hire a[n] attorney, one will be appointed to you without cost.  Do you understand those?

¶41    These warnings failed to "reasonably 'convey to [Carter] his rights as required by Miranda.'"  Powell, 559 U.S. at 60 (quoting Duckworth, 492 U.S. at 203).  This is because they did not "clearly inform[]" him that he had "the right to consult with a lawyer and to have the lawyer with him during interrogation."  Miranda, 384 U.S. at 471.  The right "to have an attorney" is left ambiguous.  When does the right attach?  At the time of the advisement?  Upon the filing of charges?  In court?  Carter had no way of knowing, based on the advisement he received.

¶42    The majority suggests that the detective implied the right could be exercised before interrogation when she said, "[B]efore I can even talk to you I have to do the formal little rights things."  See Maj. op. ¶ 15.  But it strains credibility to say the detective's obfuscation helped Carter understand his rights.  The detective was not saying, "You can exercise your rights before I talk to you, so listen up."  She was essentially saying, "There's an administrative formality that must occur before I speak with you, so bear with me for a moment, and then we can talk."  Nothing about this effort to minimize the Miranda rights helped clearly communicate that Carter had the right to counsel before and during interrogation.

¶43    Sadly, the detective's downplaying of <u>Miranda</u> is representative of a larger, even institutional effort to prevent the <u>Miranda</u> advisement from causing suspects to exercise their rights.  The detective testified that she stopped using a written <u>Miranda</u> advisement form after attending a training, in which the first "key point" in the <u>Miranda</u> materials explained, "The goal is to 'Minimize' the impact of <u>Miranda</u> on the interview."  The Aurora Police Department's written advisement form[3] includes three different references to the timing and immediacy of the rights:

- You have the right to remain silent.

- Anything you say can and will be used against you in a court of law.

- You have the right to talk to a lawyer <u>and have him present with you while you are being questioned</u>.

- If you cannot afford to hire a lawyer, one will be appointed to represent you <u>before questioning</u>, if you wish.

- <u>You can decide at any time to exercise these rights and not answer any questions or make any statements</u>.

(Emphasis added.)  Given the goal of minimizing <u>Miranda</u>'s impact, it should come as no surprise that when the detective switched to an oral advisement, none of the temporal references made the cut.  The <u>Powell</u> Court seems to have misjudged the police, at least here, when it dismissed concerns that, "hoping to obtain uninformed waivers, [they would] be tempted to end-run <u>Miranda</u> by amending their warnings to introduce ambiguity."  <u>See</u> <u>Powell</u>, 559 U.S. at 63.

---

[3] This form was admitted as an exhibit at the suppression hearing.

8

¶44    We should discourage such efforts to undermine <u>Miranda</u>.  <u>See</u> <u>Missouri v. Seibert</u>, 542 U.S. 600, 617 (2004) (prohibiting an interrogation tactic that "effectively threatens to thwart <u>Miranda</u>'s purpose of reducing the risk that a coerced confession would be admitted").  Yet when the majority uses the detective's intentional minimization to justify upholding the warnings provided here, it takes us in exactly the opposite direction.

### III. Conclusion

¶45    Because the warning about the right to counsel failed to clearly communicate that Carter had the right to counsel before and during interrogation, Carter's testimony was inadmissible.  <u>See</u> <u>Miranda</u>, 384 U.S. at 471 ("[T]his warning is an absolute prerequisite to interrogation.").  Therefore, I respectfully dissent.

I am authorized to state that JUSTICE GABRIEL joins in this dissent.