Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 5, 2017

**2017 CO 67**

**No. 13SC903, <u>Rael v. People</u>—Electronic Exhibits—Crime Scene Videos—Statements
by the Defendant—Jury Deliberations.**

This case requires the supreme court to decide whether it was reversible error for
a trial court in a criminal case to provide the deliberating jury with "unfettered and
unsupervised access" to a crime scene video and a video of a police interview of the
defendant.  A division of the court of appeals concluded that the trial court did not err
in either regard.  In reaching this conclusion, the division relied on this court's decision
in <u>DeBella v. People</u>, 233 P.3d 664, 665–66 (Colo. 2010), in which the court considered
the propriety of a trial court's order allowing the jury unfettered access to the
videotapes of a child sexual assault victim's out-of-court interviews.

Although the supreme court agrees that the trial court retains discretion
regarding juror access to the videos at issue, the court disagrees with the division that
<u>DeBella</u> provides the appropriate framework for resolving this case.  The court
nevertheless concludes that the division reached the correct result, namely, that the trial
court did not abuse its discretion in allowing the jury unfettered access to those videos
during deliberations.  In arriving at this conclusion, the supreme court observes that the
non-testimonial crime scene video did not present the same risk of undue emphasis as

do videos documenting witnesses' out-of-court, testimonial statements (like the videotapes at issue in <u>DeBella</u>).  The court likewise observes, consistent with well-established precedent, that a defendant's confession is not subject to the same limitations during deliberations as the out-of-court statements of other witnesses.

Accordingly, the supreme court affirms the judgment of the court of appeals and remands this case to that court for further proceedings consistent with this opinion.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 67

### Supreme Court Case No. 13SC903
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 10CA634

**Petitioner:**

Ignacio Ray Rael,

v.

**Respondent:**

The People of the State of Colorado.

### Judgment Affirmed
*en banc*
June 5, 2017

**Attorneys for Petitioner:**
Douglas K. Wilson, Public Defender
Michael C. Mattis, Deputy Public Defender
   *Denver, Colorado*

**Attorneys for Respondent:**
Cynthia H. Coffman, Attorney General
John T. Lee, Assistant Attorney General
   *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1     This case requires us to decide whether it was reversible error for a trial court in a criminal case to provide the deliberating jury with "unfettered and unsupervised access" to a crime scene video and a video of a police interview of the defendant, Ignacio Ray "Mike" Rael.[1]  In People v. Rael, No. 10CA634 (Colo. App. Oct. 3, 2013), a unanimous division of the court of appeals concluded that the trial court did not err in either regard.  In reaching this conclusion, the division relied on our decision in DeBella v. People, 233 P.3d 664, 665–66 (Colo. 2010), in which we considered the propriety of a trial court's order allowing the jury unfettered access to the videotapes of a child sexual assault victim's out-of-court interviews.

¶2     Although we disagree that DeBella provides the appropriate framework for resolving this case, we agree with the result reached by the division, namely, that the trial court did not abuse its discretion in allowing the jury unfettered access to the two videos during deliberations.  In our view, the jury was entitled to access the non-testimonial crime scene video because that video did not present the same risk of undue emphasis as do videos documenting witnesses' out-of-court, testimonial statements (like the videotapes at issue in DeBella).  We likewise conclude, based on the longstanding rule that a defendant's confession is not subject to the same limitations during deliberations as the out-of-court statements of other witnesses, that the jury was entitled to access the interview video.

---

[1] We granted certiorari to review the following issue:
       Whether the court of appeals erred in affirming the trial court's decision to allow the jury unfettered and unsupervised access to interrogation and non-testimonial crime scene videos during deliberations.

¶3    Accordingly, we affirm the judgment of the court of appeals and remand this case to that court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶4    In October 2008, a man found his mother dead in the bedroom of her apartment. She had been beaten to death. No one had seen or heard the attack, but witness statements and physical evidence gathered in the ensuing investigation implicated Rael, who had been the victim's boyfriend. The People eventually charged him with first-degree murder after deliberation. Rael pleaded not guilty to the charge, and the case proceeded to trial.

¶5    As part of its case-in-chief, the prosecution introduced into evidence two videos: one showing the crime scene and the other a police interview of Rael. Over Rael's objections, the court admitted both.

¶6    The prosecutor played the crime scene video for the jury on the first day of the presentation of evidence, during the direct examination of the detective who had filmed that video. From a first-person perspective, the video depicted a soundless trip through the victim's apartment, from outside the building to inside the bedroom where the victim's body lay. After the video ended, the prosecutor resumed the detective's direct examination, asking him to describe what he saw as he had walked through each room and the condition of the victim's body as he had found it. The prosecutor also offered, and the court admitted, several photographs of the crime scene.

¶7     The detective then recounted an interview that he and a colleague had conducted with Rael on the same day that the victim's body was discovered. This interview had been recorded, and the prosecution played a redacted version of the video at trial.

¶8     In the interview, Rael denied killing the victim, stating that he had not seen her since the previous afternoon. He maintained that later that evening, he and the victim's upstairs neighbor had gone to a party, where he drank a twelve-pack of beer. He said that he returned to the neighbor's apartment after the party and that he and the neighbor then drank some more. He conceded that at some point, he and the neighbor got into an altercation in which he may have hit the neighbor multiple times. He also recalled that while he was in the neighbor's apartment, the victim yelled up to him, "Hey, Mike, there's someone down here," referring to a visiting male friend. He denied that this made him angry, although he said that he later went downstairs to the victim's apartment, where he heard voices inside, one of which he believed to be a man's voice. He claimed that he banged on the door to be allowed in, but the victim would not let him in. He admitted that this made him angry, but he said that he simply left and "crashed" in a van near the apartment.

¶9     The case went to the jury, and during their deliberations, the jurors asked to view the two videos. Rael objected to this request. Regarding the crime scene video, he argued that he did not think the jury "should be given unlimited access to highlight and repeat various portions." In so arguing, he cited People v. Montoya, 773 P.2d 623 (Colo. App. 1989), and People v. Carter, 919 P.2d 862 (Colo. App. 1996), which he said might "shed some light" on the jury's right to have access to the crime scene video. With

4

respect to the interview video, Rael argued that granting the jury "complete control" over that video could cause the jurors to "focus on it unnecessarily [and] repeat it in an inappropriate manner."

¶10    The court overruled Rael's objections, finding that the cases that Rael had cited were "not [sic] longer good law" and that under People v. McKinney, 80 P.3d 823, 829 (Colo. App. 2003), rev'd on other grounds, 99 P.3d 1038 (Colo. 2004), the jurors could "do whatever they want with it, just like any other exhibit."  The court therefore provided the jury with a computer and DVDs of the two videos.  Notably, with respect to the interview video, the court instructed the clerk to act as a "projectionist" for the jurors because the DVD that was given to them contained a portion of the interview that had not been shown during the trial.  The court asked the clerk to skip over that portion of the video while the jurors were watching it.  In contrast, the jurors appear to have had complete control over the crime scene video.

¶11    The jury subsequently found Rael guilty of the lesser-included offense of second-degree murder, and the court ultimately sentenced him to forty-eight years in prison.

¶12    Rael appealed his conviction and raised seven claims of error, including, as pertinent here, that the trial court had erred in allowing the jury "unlimited and unsupervised access" to the crime scene and interview videos during deliberations.  He contended that in so doing, the trial court had committed the same error that the trial court in DeBella had committed, namely, erroneously relying on McKinney and thus not exercising appropriate discretion in granting the jury access to the video exhibits.

5

Rael asserted that, as in DeBella, the court's errors adversely affected the fairness of the trial.

¶13 The division disagreed. Applying the framework of this court's DeBella opinion, it concluded that unlike the trial court in DeBella, the trial court here had neither relied on McKinney nor neglected to exercise its discretion in providing the two videos to the jury during its deliberations. See Rael, slip op. at 31–32. After rejecting Rael's remaining contentions, the division affirmed the judgment of conviction. Id.

¶14 Rael then petitioned this court for a writ of certiorari. We granted the writ to decide whether the trial court had erred in allowing the jury unfettered and unsupervised access to the crime scene and interview videos during its deliberations.

## II. Standard of Review

¶15 Control over the use of exhibits during jury deliberations rests firmly within the trial court's discretion, and we may not substitute our own judgment for that of the trial court merely because we would have reached a different conclusion. People v. Jefferson, 2017 CO 35, ¶ 25, 393 P.3d 493, 498. Accordingly, we will not disturb the trial court's refusal to exclude or limit the use of an exhibit unless the court's decision was manifestly arbitrary, unreasonable, or unfair. Id., 393 P.3d at 499.

## III. Preservation

¶16 As an initial matter, we note that the People contend that Rael did not sufficiently preserve his objection to the jury's access to the videos during deliberations and that, as a result, this court should review Rael's claim only for plain error. See Martinez v. People, 2017 CO 36, ¶ 20, 393 P.3d 557, 561 (noting that the defendant did

not object when the trial court allowed the jury unfettered access to the DVDs and paper transcripts of the three victims' forensic interviews and therefore reviewing for plain error). We disagree.

¶17 We do not require that parties use "talismanic language" to preserve an argument for appeal. People v. Melendez, 102 P.3d 315, 322 (Colo. 2004). The objection need only draw the trial court's attention to the asserted error, thus allowing the court "a meaningful chance to prevent or correct the error" and creating a record for appellate review. Martinez v. People, 2015 CO 16, ¶ 14, 344 P.3d 862, 868.

¶18 Here, after the jurors asked to review the two videos during their deliberations, Rael immediately objected, stating, "That might be a problem, Judge." He went on to argue that the jurors should not be given "unlimited access to highlight and repeat various portions" of the videos and that case law prohibited the jurors from "repeatedly play[ing] other witnesses' statements." In doing so, Rael prompted the trial court to rule on the very issue presented here and to create a record of its reasoning for our review.

¶19 Accordingly, we conclude that Rael adequately preserved the issue.

## IV. Analysis

¶20 Rael contends that the trial court reversibly erred by not exercising any discretion in allowing the jury "unlimited and unsupervised access" to the crime scene and interview videos during its deliberations. We address the jury's access to each video separately, beginning with the crime scene video and then turning to the interview video.

## A. The Crime Scene Video

¶21 According to Rael, the trial court here, like the trial court in <u>DeBella</u>, abused its discretion when it did not assess whether the video exhibits at issue would "aid the jury in its proper consideration of the case, and even if so, whether a party w[ould] nevertheless be unfairly prejudiced by the jury's use" of the videos. In our view, however, Rael's premise is flawed because the assessment described in <u>DeBella</u> does not control jury access to non-testimonial exhibits like the crime scene video.

¶22 <u>DeBella</u>, 233 P.3d at 665, involved jury access to videotaped interviews of the child-victim that had been admitted as exhibits in the defendant's trial for sexual assault on a child and enticement. Although our opinion sometimes referred generally to "trial exhibits," when read in context, it is clear that our analysis hinged on the nature of the exhibits at issue, namely, the victim's videotaped, out-of-court statements detailing the charged sexual assaults. <u>See id.</u> at 668–69. Our opinion flowed from a line of precedent dealing with jury requests during deliberations to rehear portions of trial testimony, <u>see</u> <u>Settle v. People</u>, 504 P.2d 680, 680–81 (Colo. 1972), and exhibits substituting for trial testimony, <u>see, e.g.</u>, <u>Frasco v. People</u>, 165 P.3d 701, 704–06 (Colo. 2007) (involving jury access during deliberations to the videotaped, out-of-court interview of a child-victim of sexual and physical abuse). We have observed that honoring requests for access in the jury room to witnesses' out-of-court statements effectively puts the witness in that room during deliberations and creates a risk that the jury will place undue weight or emphasis on the out-of-court statements. <u>See</u> <u>Jefferson</u>, ¶ 45, 393 P.3d at 501; <u>see also</u> <u>United States v. Binder</u>, 769 F.2d 595, 600 (9th Cir. 1985) (noting that videotaped

8

testimony is "unique" and "serves as the functional equivalent of a live witness"), overruled in part on other grounds by United States v. Morales, 108 F.3d 1031, 1035 n.1 (9th Cir. 1997).

¶23    The same danger of undue emphasis does not inhere in non-testimonial evidence like the crime scene video at issue here.  In our view, that video was more like a non-testimonial, tangible exhibit (such as a still photograph of the crime scene) than a testimonial one (such as a witness's recorded statement), and courts in Colorado and other jurisdictions have consistently upheld juror access to such non-testimonial exhibits.  See, e.g., People v. Aponte, 867 P.2d 183, 188–89 (Colo. App. 1993) (perceiving no error in the trial court's decision to allow the jury unsupervised access to a videotape and transcript of a drug transaction; these exhibits were "tangible exhibits with verbal content which [were] non-testimonial in character because they depict[ed] the actual commission of the crime itself," rather than a testimonial "narrative of events"); Burkhart v. Commonwealth, 125 S.W.3d 848, 850 (Ky. 2003) (noting that juror access to testimonial exhibits presents a risk of undue emphasis whereas juror access to non-testimonial exhibits, such as the surveillance video at issue, presents no such concerns);  Chambers v. State, 726 P.2d 1269, 1275 (Wyo. 1986) ("[T]here is no rule of exclusion for tangible exhibits with verbal content.  Nontestimonial exhibits with such content, such as contract documents or recordings of criminal acts which are verbal in nature, are generally allowed to go into the deliberations.") (quoting 3 David W. Louisell  & Christopher B. Mueller, Federal Evidence § 390, at 684 (1980)).

¶24 We believe that these authorities are well reasoned and persuasive, and we follow them here. Accordingly, we discern no abuse of discretion in the trial court's decision to grant the jury unfettered access to the crime scene video during its deliberations.

## B. The Interview Video

¶25 Rael makes a similar argument regarding the interview video. Specifically, he contends that pursuant to DeBella, the trial court erred in granting the jury unfettered access to this video without first determining whether the video would have aided the jury in its proper consideration of the case and whether such access would have caused unfair prejudice. Again, we disagree.

¶26 Courts have long treated jury access to transcripts and recordings of a defendant's own out-of-court statements differently from jury access to transcripts and recordings of other witnesses' out-of-court statements. As a division of our court of appeals has correctly observed, the former "were categorically allowed into the jury room, for whatever consideration the jury would give them." People v. Gingles, 2014 COA 163, ¶ 15, 350 P.3d 968, 971; see also People v. Ferrero, 874 P.2d 468, 473 (Colo. App. 1993) (holding that a videotape of the defendant's confession that had been admitted into evidence could be taken into the jury room during deliberations); People v. Miller, 829 P.2d 443, 446 (Colo. App. 1991) (adopting "the general rule, enunciated by a majority of the states in which this issue has been decided," that a transcript of the defendant's voluntary confession, which had been admitted into evidence, could be taken into the jury room during deliberations).

10

¶27 Video recordings of other witnesses' out-of-court statements, in contrast, have had a more complex history.

¶28 Until 2007, when Frasco, 165 P.3d at 704, disapproved of the practice, divisions of the court of appeals had relied on C.R.C.P. 47(m) for guidance on the question of jury access to exhibits in criminal cases (a matter that the Rules of Criminal Procedure did not address). For example, in 1989, the Montoya division applied, by analogy, C.R.C.P. 47(m)'s "universal rule that depositions may not be reviewed by a jury on an unsupervised basis" and thus concluded that a trial court may allow jurors in a criminal case to review a witness's videotaped statement "only under circumstances that will assure [sic] that such statements are not given 'undue weight or emphasis.'" See Montoya, 773 P.2d at 625–26 (quoting Settle, 504 P.2d at 681).

¶29 As C.R.C.P. 47(m) changed, however, so did its judicially created criminal analog. For example, in 2003, after a jury reform project "intended to provide more information for jurors" had deleted C.R.C.P. 47(m)'s categorical ban on depositions in the jury room, the McKinney division noted that the change had cast doubt on Montoya's reasoning and concluded that "under the present rule, all exhibits that have been admitted as evidence may be taken into the jury room, unless it is infeasible to do so." McKinney, 80 P.3d at 829.

¶30 Four years later, in Frasco, 165 P.3d at 704, this court clarified the law in this area, stating, "Whatever C.R.C.P. 47(m) may now require in civil proceedings, it does not govern the use of exhibits in criminal proceedings." We then concluded that trial courts in criminal proceedings retain discretionary control over jury access to exhibits during

11

deliberations.  Id.  We cautioned, however, that those courts must guard against juries' unfair or prejudicial use of certain exhibits, including, for example, the videotaped, out-of-court statements of child–victims of sexual assault.  Id. at 703; accord Jefferson, ¶ 41, 393 P.3d at 500; DeBella, 233 P.3d at 666.

¶31  In light of this history, we must determine whether trial courts bear the same obligation to prevent unfair or prejudicial use of the defendant's videotaped, out-of-court confession during deliberations that we imposed with respect to the videotaped, out-of-court statements of the child-victims in Jefferson, DeBella, and Frasco.  Stated otherwise, this case requires us to decide whether the long-held distinction between a defendant's own words and those of other witnesses survived Frasco's clarification of the law.  We conclude that it did.

¶32  Courts have long recognized that an un-coerced confession "is among the strongest kinds of physical evidence the prosecution may produce."  Miller, 829 P.2d at 446 (quoting People v. Caldwell, 236 N.E.2d 706, 714 (Ill. 1968)).  As one commentator observed, a confession's "centrality in the case warrants whatever emphasis may result."  2 Kenneth S. Broun, McCormick on Evidence § 220, at 76 (7th ed. 2013).  Accordingly, appellate courts in Colorado have consistently concluded that when considering a jury's access to a defendant's own admissible, out-of-court statements, no special protections against undue emphasis are required and the jury is entitled to unrestricted access to those statements.  See Gingles, ¶ 18, 350 P.3d at 971–72; Ferrero, 874 P.2d at 473; Miller, 829 P.2d at 446.

¶33 Neither <u>Frasco</u> nor its progeny cast doubt on this reasoning. Indeed, in permitting <u>greater</u> access to exhibits containing witnesses' out-of-court statements (i.e., by replacing a rule tethered to C.R.C.P. 47(m) with one of discretionary control), <u>Frasco</u> gave no indication that (1) the jury should have <u>less</u> access to a defendant's confession or (2) a defendant's confession must be treated in the same manner as the testimonial statement of a witness. <u>Gingles</u>, ¶ 18, 350 P.3d at 971–72.

¶34 Accordingly, and for the reasons set forth in <u>Carter v. People</u>, 2017 CO 59, ¶¶ 20–22, ___ P.3d ___, which we also decide today, we agree with the <u>Gingles</u> division that "the historical reason for treating a defendant's confession differently retains its vitality," <u>id.</u>, and we adopt that division's reasoning and that of the <u>Miller</u> and <u>Ferrero</u> divisions before it, <u>see id.</u>; <u>Ferrero</u>, 874 P.2d at 473; <u>Miller</u>, 829 P.2d at 446.

¶35 Applying the foregoing principles here, we conclude that the concerns that motivated our decision in <u>DeBella</u> (i.e., effectively putting a child-victim in the jury room during deliberations and allowing the jury to place undue weight or emphasis on his or her out-of-court statements) do not apply to a defendant's own out-of-court statements. As more fully set forth above and in our decision today in <u>Carter</u>, however, trial courts nonetheless retain discretionary control over jury access to such exhibits. <u>See Carter</u>, ¶ 22; <u>Frasco</u>, 165 P.3d at 704. In this case, we conclude that the trial court properly exercised this discretion. Specifically, as discussed more fully above, the court allowed the jury access to the interview video only after entertaining argument, considering the case law cited by the parties, and addressing the problem posed by the fact that the video inadvertently contained a segment that should have been redacted.

13

## V. Conclusion

¶36   For these reasons, we affirm the judgment of the division and remand this case for further proceedings consistent with this opinion.